**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

CHARLES F. PLYMAIL,

                Petitioner,

v.                                  CIVIL ACTION NO. 3:14-6201

PATRICK A. MIRANDY,
Warden, St. Mary's Correctional Center,

                Respondent.

**MEMORANDUM OPINION AND ORDER**

This action, brought pro se, was referred to a United States Magistrate Judge for proposed findings of fact and recommendation for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B). Now pending before the Court is Respondent's Second Motion to Dismiss for Failure to Exhaust (ECF No. 58). The Magistrate Judge recommends that Respondent's Second Motion to Dismiss for Failure to Exhaust (ECF No. 58) be granted and that Petitioner's Petition under 28 U.S.C. § 2254 (ECF No. 1) be dismissed without prejudice (ECF No. 66). Petitioner filed objections to the PF&R on June 30, 2017 (ECF No. 70). For the reasons set forth below, the Court accepts Petitioner's objections as specified and rejects the Magistrate Judge's findings and recommendations to the extent that they conflict with the following Memorandum Opinion and Order.

## I.    Introduction

On January 31, 2014, Petitioner Charles F. Plymail filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this Court (ECF No. 1). In his Petition, Petitioner alleges the following grounds for habeas relief:

1. The State's 19-year delay in affording [Petitioner] an appeal of [his] criminal conviction violates the due process provisions of the Fourteenth Amendment to the United States Constitution.

2. Because the jurors at [Petitioner's] trial were subjected to judicial coercion, [his] conviction was obtained in violation of the due process provisions of the Fourteenth Amendment of the United States Constitution.

3. The plainly improper remarks made by the prosecutor during the State's rebuttal closing were prejudicial enough to have denied [Petitioner's] right to a fair trial and, thus, violated the due process provisions of the Fourteenth Amendment to the United States Constitution.

4. Because [Petitioner's] waiver of the right to testify was based on misleading statements made by court and counsel, [Petitioner's] conviction was obtained in violation of the due process provisions of the Fourteenth Amendment to the United States Constitution.

5. Because the trial court lacked jurisdiction to enhance [Petitioner's] sentence under West Virginia's recidivist statute, its imposition of a life sentence violated the due process provisions of the Fourteenth Amendment to the United States Constitution.

6. Because [Petitioner] was not provided with effective assistance of counsel, [his] conviction was obtained in violation of the Sixth Amendment to the United States Constitution.

(ECF No. 1).

### a.    Procedural History

Petitioner's case was referred to Magistrate Judge VanDervort for findings of fact and recommendation for disposition on February 26, 2014 (ECF No. 4). After supplemental and

responsive pleadings were filed by Petitioner and Respondent, Respondent filed a Motion to Dismiss and Incorporated Memorandum on March 25, 2015 (ECF No. 14). Petitioner responded to the Motion on April 9, 2015 (ECF Nos. 18 and 19), and Respondent replied on April 10, 2015 (ECF No. 20). On December 21, 2015, Magistrate Judge VanDervort entered a PF&R in which he recommended that Petitioner's Petition be dismissed without prejudice for failure to exhaust (ECF No. 31). Petitioner filed objections to the PF&R on January 11, 2016 (ECF No. 36).

By Memorandum Opinion and Order entered on March 30, 2016, this Court adopted Magistrate Judge VanDervort's recommendation and dismissed Petitioner's Petition without prejudice (ECF Nos. 38 and 39). Petitioner appealed (ECF No. 42). By per curiam opinion entered on November 23, 2016, the United States Court of Appeals for the Fourth Circuit found that the District Court had "prematurely dismissed [Petitioner's] petition for failure to exhaust his state remedies," and, accordingly, vacated the District Court's judgment and remanded the case to the District Court for further proceedings (ECF No. 50).

On remand, this case was referred to Magistrate Judge Aboulhosn by Order entered December 19, 2016 (ECF No. 54). On December 21, 2016, Magistrate Judge Aboulhosn directed Respondent to file a supplemental response to Petitioner's Petition and to include records "that would facilitate a determination of [Petitioner's claim that he is excused from the exhaustion requirement because there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of Petitioner]" (ECF No. 55).

Pursuant to Magistrate Judge Aboulhosn's Order, Respondent filed his Answer, a Second Motion to Dismiss for Failure to Exhaust, and a Memorandum of Law in Support on February 2, 2017 (ECF Nos. 57, 58, 59). Petitioner responded on March 17, 2017 (ECF No. 65).

After consideration of the above, Magistrate Judge Aboulhosn entered the present PF&R on May 23, 2017 (ECF No. 66). Pursuant to his proposed findings, Magistrate Judge Aboulhosn recommends that the District Court grant Respondent's Second Motion to Dismiss for Failure to Exhaust (ECF No. 58) and dismiss Petitioner's Petition (ECF No. 1) without prejudice (ECF No. 66). Petitioner filed objections to the PF&R on June 30, 2017 (ECF No. 70). For reasons specified herein, the District Court rejects the Magistrate Judge's proposed findings as specified and declines to accept the Magistrate Judge's recommendations for disposition.

### b. Exhaustion of Petitioner's First Five Section 2254 Claims

At the time Petitioner filed the present Section 2254 Petition for Writ of Habeas Corpus with this Court in January 2014 (ECF No. 1), Petitioner's direct appeal of his criminal case (West Virginia State Court Case No. 93-F-50) was still pending in the West Virginia state court system (*see* ECF. No. 58-78). In that appeal, Petitioner presented the first five claims now before this Court to the West Virginia Supreme Court (*see* ECF Nos. 58-60, 1), thereby giving the highest court in the state the opportunity to consider Petitioner's constitutional claims.

The Supreme Court of West Virginia decided Petitioner's direct appeal on November 20, 2015 (ECF No. 58-78). As Respondent concedes, the Supreme Court's decision rendered Petitioner's first five claims now before this Court exhausted (ECF No. 59). As such, the Court will focus exclusively on Petitioner's remaining claim of ineffective assistance of counsel.

### c. Petitioner's Unexhausted Claim of Ineffective Assistance of Counsel

Though Respondent concedes that Petitioner has exhausted his first five claims, Respondent nonetheless asks this Court to grant his Second Motion Dismiss for Failure to Exhaust based on Petitioner's failure to exhaust his sixth claim of ineffective assistance of counsel (ECF No. 59). In his Section 2254 Petition, Petitioner alleges: "Because [Petitioner] was not provided

with effective assistance of counsel, [his] conviction was obtained in violation of the Sixth Amendment to the United States Constitution" (ECF No. 1 at 23). This claim was not presented to the West Virginia Supreme Court in Petitioner's direct appeal (*see* ECF Nos. 58-60, 58-76), but Petitioner did assert this claim in his Petition for Writ of Habeas Corpus that he filed in Cabell County Circuit Court on March 13, 2013 (ECF No. 58-21). Petitioner's state habeas case currently remains pending (*see* ECF No. 72).

Respondent contends, "Petitioner's State *habeas* proceedings are ongoing. Once Petitioner has properly adjudicated his claims of ineffective assistance of counsel in his State *habeas* proceedings, [his Section 2254 Petition] will be ripe for consideration by this Court" (ECF No. 58 at 2). Petitioner concedes that he has not exhausted his ineffective assistance of counsel claim in state court, but argues that there has been an inordinate delay in his state court proceedings such that the state corrective process has been rendered ineffective and exhaustion should be excused (ECF No. 70 at 16).

## II.    Magistrate Judge's Proposed Findings and Recommendations

On May 23, 2017, Magistrate Judge Aboulhosn submitted the present PF&R (ECF No. 66). After reviewing the procedural history of Petitioner's direct appeal, state habeas case, and Section 2254 Petition, Magistrate Judge Aboulhosn analyzed whether Petitioner's failure to exhaust should be excused (ECF No. 66 at 25–37). In doing so, Magistrate Judge Aboulhosn reviewed the history of Petitioner's state cases in light of four factors: length of delay, reason for delay, assertion of rights, and prejudice (ECF No. 66 at 25–37). He concluded that "the alleged delay in Petitioner's State *habeas* proceedings are not the magnitude of delay that has been determined to be inordinate or a violation of due process;" that "a significant portion of any delay in Petitioner's State *habeas* proceedings is attributable to Petitioner's continued dissatisfaction with appointed counsel;" that

Petitioner diligently asserted his rights; and that there is no indication that Petitioner has suffered prejudice as a result of the alleged delay in state court proceedings (ECF No. 66 at 25–37).

Pursuant to those proposed findings, Magistrate Judge Aboulhosn concluded that the balancing factors weighed against Petitioner and that exhaustion should not be excused (ECF No. 66 at 37). As a result, he recommends that the Court grant Respondent's Second Motion to Dismiss for Failure to Exhaust and dismiss Petitioner's Petition without prejudice (ECF No. 66 at 40).

### III. Petitioner's Objections to PF&R

On June 30, 2017, Petitioner filed the following five objections to the present PF&R:

A. The factual statement (i.e., "Procedural History"), which is used to justify a recommendation of dismissal, is inaccurate and misleading.

B. Though the PF&R correctly identifies the appropriate standards for reviewing a motion to dismiss, . . . it fails to abide by those standards.

C. The PF&R applies an inappropriate standard to determine whether the Petitioner's failure to exhaust state remedies should be excused due to inordinate delay in the state corrective process.

D. In applying the speedy trial analysis set forth in *Barker v. Wingo* . . . the PF&R continues to overlook undisputed and manifestly relevant facts, to rely upon factual misstatements and false assumptions, and to misinterpret and/or misapply case law. Consequently, the PF&R reaches an incorrect finding with regard to each of the four *Barker* factors.

E. The PF&R inappropriately excuses the State from its obligation to provide timely appellate review.

(ECF No. 70).

The Court accepts Petitioner's Objections A, B, and C to the extent specified herein and disposes of Objections D and E as noted below.

### IV. Standard of Review of PF&R

This Court conducts a de novo review of those portions of the Magistrate Judge's proposed findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of

the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). The Court, however, is not required to review the factual or legal conclusions of the Magistrate Judge to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## V. Discussion

### a. Petitioner's Objections A and B: Inaccuracies of PF&R's Procedural History and Standard of Review for Motion to Dismiss

The Court accepts Petitioner's Objection B that, although the PF&R correctly identifies the appropriate standard for reviewing a motion to dismiss, it fails to abide by that standard in its consideration of Respondent's Second Motion to Dismiss for Failure to Exhaust. The Court finds that this failure to properly apply the standard of review resulted in certain omissions and inaccuracies in the PF&R's Procedural History. To the extent that the PF&R's Procedural History was flawed by the inappropriate application of the deferential standard of review required for motions to dismiss, the Court also accepts Petitioner's Objection A. The Court finds that, by properly applying the prescribed standard of review to the facts, the deficiencies in the PF&R's Procedural History to which Petitioner objects are cured.

### i. Applicable Standard

As the PF&R correctly states, a federal court must evaluate a motion to dismiss a Section 2254 petition "under the standards governing motions to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006). Accordingly, the Court is required to "assume all facts pleaded by [Petitioner] to be true." *Rouse v. Lee*, 339 F.3d 238, 247 n. 8 (4th Cir. 2003). The Fourth Circuit has supplemented this standard

by providing that "the adequacy of a Section 2254 petition [should] be judged on the face of the petition and any attached exhibits." *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009) (internal quotations omitted).

### ii. State Habeas Case Timeline

In accordance with this standard, reading all facts in a light most favorable to Petitioner, the Court finds the following to be true of Petitioner's ongoing state habeas case.

### 1. Outset of Case

On March 13, 2013, Petitioner filed a Petition for Writ of Habeas Corpus (case number 13-C-159) in Cabell County Circuit Court (ECF No. 58-21). The case was assigned to Judge Alfred Ferguson (ECF No. 72). At the time of this filing, Petitioner's direct appeal of his criminal conviction was still pending in state court (ECF No. 58-78). On April 3, 2013, Petitioner wrote a letter to the Cabell County Circuit Court Clerk requesting the case number and judge assignment for his state habeas petition (ECF No. 58-23). The docket report indicates that a docket sheet was sent to Petitioner upon receipt of this request (ECF No. 72).

Nearly nine months later, on December 2, 2013, Stacy Adkins, Judge Ferguson's law clerk, wrote a letter to Petitioner in which she noted that Petitioner's direct appeal was still pending and asked Petitioner whether he wanted to proceed in his habeas case during the direct appeal's pendency (ECF No. 58-31). Petitioner responded promptly, informing Ms. Adkins that he did not want his habeas case to be held in abeyance and that he wished to have counsel appointed to him for the habeas proceedings (ECF No. 58-35). Petitioner's responsive letter was filed on December 13, 2013 (ECF No. 58-77). On the same day, Judge Ferguson entered an Order appointing Sarah Dixon as counsel for Petitioner and directing that an amended petition be filed no later than May 1, 2014 (ECF No. 58-36).

## 2. Ms. Dixon's Representation

According to Petitioner, Ms. Dixon did not contact him until two months after her appointment (ECF No. 65 at 20). While she presumably contacted him thereafter, on May 1, 2014, Ms. Dixon missed the court's deadline to file an amended petition on Petitioner's behalf (ECF No. 58-77). On May 2, 2014, Judge Ferguson entered an Order appointing Petitioner's appellate counsel Steven Cook to serve as co-counsel in Petitioner's state habeas case[1] and extending the deadline for Petitioner to file an amended petition "to a date to be determined by the court" (ECF No. 58-48). The court did not set a new deadline for the amended petition until more than two years later (*see* ECF Nos. 72, 72-4).

According to Petitioner, in the summer following Mr. Cook's appointment as co-counsel, Petitioner requested that Ms. Dixon seek an evidentiary hearing (ECF No. 65 at 20). In response, Ms. Dixon "flatly refus[ed]" to take action in Petitioner's state habeas case until after Petitioner's direct appeal had been resolved (ECF No. 65 at 20). At some point between August 2014 and October 2014, Ms. Dixon accepted employment in the Cabell County Prosecutor's Office and moved to withdraw as counsel in Petitioner's state habeas case (ECF Nos. 58-58, 65 at 20, 72-7 at 2). Judge Ferguson granted Ms. Dixon's motion by Order entered October 17, 2014 (ECF No. 58-58). In the same Order, Judge Ferguson appointed Abraham Saad to replace Ms. Dixon as counsel for Petitioner (ECF No. 58-58). The clerk of court was directed to provide a certified copy of the Order to Ms. Dixon, Mr. Saad, Mr. Cook, and the Cabell County Prosecutor (ECF No. 58-58).

## 3. Mr. Cook's Representation

In the months that followed Ms. Dixon's withdrawal, Petitioner and Mr. Cook's professional relationship declined as a result of Petitioner's disapproval of the work Mr. Cook

---

[1] Judge Ferguson appointed Mr. Cook to serve as appellate counsel in Petitioner's direct appeal on June 3, 2014 (ECF No. 58-50).

submitted on Petitioner's behalf in Petitioner's direct appeal (ECF No. 65 at 21). On February 4, 2015, Petitioner wrote a letter to Mr. Cook in which he complained of perceived deficiencies in Mr. Cook's work on Petitioner's direct appeal and accused Mr. Cook of incompetence (ECF No. 58-71). In the letter, Petitioner wrote, "I hereby waive my right to any further assistance from you or your kind. I wish to proceed without counsel for the remainder of this case" (ECF No. 58-71). Petitioner filed this letter in the docket of his direct appeal (Appeal No. 14-0016) on February 6, 2015 (ECF No. 58-70). There was no mention of Petitioner's pending state habeas case in the letter (*see* ECF No. 58-71), and Petitioner did not file the letter or any similar waiver of counsel in his state habeas case (Case No. 93-F-50) (*see* ECF No. 72). Pursuant to Petitioner's letter, Mr. Cook moved to withdraw from representation in Petitioner's direct appeal in February 2015 (ECF No. 58-72) and the West Virginia Supreme Court granted the motion later that month (ECF No. 58-73). Neither Mr. Cook's motion nor the West Virginia Supreme Court's Order granting the motion made any mention of Petitioner's pending state habeas case (*see* ECF Nos. 58-72, 58-73).

Five months after withdrawing from Petitioner's direct appeal, Mr. Cook filed a motion to withdraw from Petitioner's state habeas case on July 2, 2015 (ECF No. 72-1). In his motion, Mr. Cook wrote that there had been a breakdown in communication between Petitioner and Mr. Cook that led to Mr. Cook's withdrawal from Petitioner's direct appeal and that, given that the habeas case was a matter related to Petitioner's direct appeal, Mr. Cook should be granted leave to withdraw and "Petitioner should be afforded new appointed counsel under the circumstances" (ECF No. 72-1). Judge Ferguson granted Mr. Cook's motion and, in the accompanying Order, stated, "A separate order appointing new counsel will be entered as necessary" (ECF No. 72-2). Judge Ferguson included this language in the Order even though, at the time, Mr. Saad was still

listed as counsel of record for Petitioner (*see* ECF No. 58-58). The clerk of court was directed to send a copy of the Order removing Mr. Cook as counsel to Mr. Saad (ECF No. 72-2).

### 4. Mr. Saad's Representation

While Petitioner's relationship with Mr. Cook declined, Mr. Saad remained counsel of record in Petitioner's ongoing state habeas case (*see* ECF No. 58-58). Mr. Saad was appointed to represent Petitioner in October 2014 at the time of Ms. Dixon's withdrawal from the case (ECF No. 58-58), and to date no order has been entered removing him as counsel of record (*see* ECF No. 72).

According to Petitioner, Mr. Saad "made no attempt to communicate with [Petitioner]" following his appointment to Petitioner's state habeas case in October 2014 (ECF No. 65 at 20). After Mr. Saad failed to contact Petitioner for over one year following his appointment, Petitioner states that he filed an ethical complaint against Mr. Saad in November 2015 (ECF No. 72-7). While Mr. Saad's response to the complaint has not been included in the record, Petitioner claims that Mr. Saad asserted in his response that he was unaware of his appointment, "that the [Circuit Court] did not provide him with a copy of the order appointing him, that [Mr.] Cook did not discuss the matter with him and that [Ms.] Dixon . . . likewise failed to mention his appointment" (ECF No. 72-7).

In a letter dated December 1, 2017, Stacy Adkins, Judge Ferguson's law clerk, wrote to Joanne Kirby of the Lawyer Disciplinary Counsel in regard to Petitioner's complaint against Mr. Saad (ECF No. 72-3). In her letter, Ms. Adkins wrote that "Mr. Saad had expressed reservation about representing [Petitioner]" and, though there was an entered order appointing Mr. Saad as counsel, Ms. Adkins "did not think [the court] needed to appoint Mr. Saad" because, at the time of Mr. Saad's appointment, Mr. Cook was still representing Petitioner in the state habeas

proceedings (ECF No. 72-3). Ms. Adkins also addressed Mr. Cook's withdrawal from the case, writing, "Since [Petitioner] did not want representation or request new counsel, Judge Ferguson did not appoint new counsel" (ECF No. 72-3). Ms. Adkins concluded her letter by saying, "As I was unaware Mr. Saad was on this case, it logically follows that Mr. Saad was unaware he was on the case. I asked Mr. Saad to draft an Amended Order removing him as counsel of record for [Petitioner's] habeas case" (ECF No. 72-3). Mr. Saad never entered any such order thereafter (*see* ECF No. 72).

This Court finds no support for Ms. Adkins' assertion that Petitioner indicated that he did not want representation in his state habeas proceedings. The Court also notes that, while Mr. Saad allegedly asserted that he was unaware of his appointment, the clerk of the Circuit Court was directed to send Mr. Saad a copy of both the order by which he was appointed (ECF No. 58-58) and the order granting Mr. Cook's motion to withdraw the following year (ECF No. 72-2).

### 5. Mr. Meadows' Representation

After the Circuit Court granted Mr. Cook's motion to withdraw in July 2015, Petitioner's state habeas case laid dormant in state court for nearly a year (*see* ECF No. 72). Then, on May 18, 2016, Judge Ferguson entered a Scheduling Order in which he stated, "Petitioner [ ] previously indicated he did not wish to have an attorney and thus is representing himself" (ECF No. 72-4). Again, this Court finds no evidence in the record to support the inference that Petitioner at any time indicated that he did not wish to have representation in his state habeas proceedings. Judge Ferguson's May 2016 Order directed Petitioner to file an Amended Petition no later than July 1, 2016, less than two months later, and threatened that Petitioner's failure to file such a petition would result in his case being dismissed (ECF No. 72-4).

On June 29, 2016, Petitioner filed a pro se Motion for Enlargement of Time (ECF No. 72-5). The Circuit Court granted the motion on July 7, 2016, resetting the deadline for September 1, 2016 (ECF No. 72-6). On August 30, 2016, Petitioner filed another pro se motion in the Circuit Court, moving for the court to replace court-appointed counsel (ECF No. 72-7). In his motion, Petitioner asserted that at no point had he waived his right to counsel in his state habeas proceedings and that no motion or order had been entered removing Mr. Saad as counsel of record even after the court had directed Mr. Saad to prepare such an order (ECF No. 72-7). As such, Petitioner requested that the court replace Mr. Saad as counsel of record (ECF No. 72-7).

Nearly five months after Petitioner's request for new counsel, Judge Ferguson entered an order appointing Michael Meadows as counsel for Petitioner in his ongoing state habeas proceedings on January 18, 2017 (ECF No. 72-8). Judge Ferguson directed Mr. Meadows to file an amended petition on Petitioner's behalf by May 1, 2017 (ECF No. 72-8). On June 16, 2017, more than a month-and-a-half after the filing deadline, Mr. Meadows filed a Motion to Extend Time in the Circuit Court, requesting additional time to prepare Petitioner's amended petition (ECF No. 72-9). The court granted the motion, extending the filing deadline to August 31, 2017 (ECF No. 72-10). As of September 6, 2017, no amended petition had been filed in the Circuit Court on Petitioner's behalf (*see* ECF No. 72).

Reading all facts in a light most favorable to Petitioner, the Court finds the above facts to be true. In doing so, the Court accepts Petitioner's Objection B. To the extent that the above findings of fact are inconsistent with the present PF&R, the Court rejects the PF&R's proposed findings and accepts Petitioner's objections thereto, as noted in Petitioner's Objection A.

### b. Petitioner's Objection C: Standard to Determine Whether Exhaustion Should Be Excused[2]

In light of the Court's findings of fact regarding Petitioner's ongoing state habeas case as detailed above, the Court finds that there has been an inordinate delay in state court proceedings such that Petitioner's state remedies have been rendered ineffective. Accordingly, exhaustion of Petitioner's ineffective assistance of counsel claim should be excused at this time.

Section 2254(b)(1)(A) requires that a state prisoner exhaust state court remedies before seeking federal relief. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State").

Though this exhaustion requirement is not jurisdictional, the Supreme Court has encouraged a "rigorously enforced total exhaustion rule" to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings" and to facilitate more comprehensive development of factual records before they are presented to the federal courts for review. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). Even with this call for rigorous enforcement, though, the rule of exhaustion is a rule of comity and should be "applied with flexibility." *Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir. 1977).

Section 2254(b)(1)(B) provides that exhaustion may be excused if "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." The Fourth Circuit has recognized that, even under the Supreme

---

[2] In light of the Court's findings below regarding the applicable standard for consideration of whether exhaustion should be excused, the Court does not reach Petitioner's Objections D and E at this time. As explained in the text that follows, Petitioner's arguments regarding the *Barker* factors and whether the State breached an obligation to provide timely appellate review are arguments in support of his Petition on its merits. As the inquiry of this Memorandum Opinion and Order ends at the threshold question of whether Petitioner's case should be dismissed for failure to exhaust, the Court does not consider these substantive arguments at this time.

Court's call for rigorous enforcement of the total exhaustion requirement, there are circumstances under which federal courts should excuse exhaustion. *See Farmer v. Cir. Ct. of Md. for Balt. Cty.*, 31 F.3d 219, 223 (4th Cir. 1994) ("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance"). For example, "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." *Ward v. Freeman*, 46 F.3d 1129 at *1 (4th Cir. 1995) (unpublished table decision).

In this District, "an inordinate and unjustified delay may excuse the petitioner from the traditional statutory requirement of exhaustion." *Walkup v. Haines*, 2005 WL 2428163 at *3 (S.D.W.Va. Sept. 30, 2005). Petitioner argues exhaustion should be excused for his ineffective assistance of counsel claim due to the inordinate and ongoing delay in his state habeas case (ECF No. 65 at 134).

In considering whether a delay is inordinate and unjustified such that exhaustion should be excused, courts look to several factors including: (1) the length of the delay (*see Farmer,* 31 F.3d at 223), (2) the significance of any action that has been taken in state court (*see Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004)), and (3) the party responsible for the complained-of delay (*see Matthews v. Evatt*, 51 F.3d 267 n.* (4th Cir. 1995) (unpublished decision)).[3] If an inordinate delay is found, the burden shifts to the State to provide justification for the delay and to demonstrate why

---

[3] The Court notes that, while the Fourth Circuit has ruled that an "undue delay in processing an appeal *may* rise to the level of a due process violation" (*United States v. Johnson*, 732 F.2d 379, 381 (4th Cir. 1984)), at no point has the Court *required* such a showing as a prerequisite for excusing exhaustion. *See Ward v. Freeman*, 46 F.3d 1129 at *1 (4th Cir. 1995) (unpublished opinion). *But see Gary v. Bodison*, 2010 WL 2195464 at *3 (D.S.C. June 1, 2010) ("Federal intervention on the merits of a state [post-conviction relief] application is generally warranted only in cases where a delay in state court proceedings amounts to a denial of a petitioner' due process rights."). While the *Barker* factors discussed in the PF&R are undoubtedly the appropriate standard for analysis of Petitioner's substantive claim that the delay in his appeal amounted to a due process violation, the PF&R prematurely applied those factors to determine whether exhaustion should be excused. Petitioner is not required to make a showing of a due process violation in order for the Court to find here at the outset that there has been an inordinate delay in his state court proceedings such that exhaustion should now be excused.

the petitioner should still be required to exhaust his state court remedies before seeking relief in federal court. *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994). The Court examines each of these factors in turn.

### i. Length of Delay

Petitioner argues that the Court should find that the delay in his state habeas proceedings is inordinate because his case has been pending for four-and-a-half years and "no significant progress has occurred since its inception" (ECF No. 65 at 20).

In considering whether there has been inordinate delay in a state court proceeding, courts often look first to the length of the delay at issue. *See Ward v. Freeman*, 46 F.3d 1129 at *1 (4th Cir. 1995) (unpublished opinion). In cases of brief delays, courts have declined to excuse exhaustion of state remedies. *See Sparks v. Clarke*, 2016 WL 1054721 at *4 (E.D.Va. Mar. 10, 2016) (declining to excuse exhaustion where the state case had only been pending for one year and three months); *Burton v. S.C. Dep't of Corr.*, 2005 WL 3465858 at *6 (D.S.C. Dec. 16, 2005) (declining to excuse exhaustion where the state case had only been pending for seven months).

In cases of more extensive delays, however, courts have been far more willing to excuse exhaustion. *See Moore v. Deputy Comm'r of SCI-Huntingdon*, 946 F.2d 236, 242 (3d Cir. 1991) (excusing exhaustion after a five-year delay); *Mathis v. Hood*, 851 F.2d 612, 615 (2d Cir. 1988) (excusing exhaustion after a six-year delay); *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986) (excusing exhaustion after a delay of two-and-a-half years); *Codispoti v. Howard*, 589 F.2d 135, 142 (3d Cir. 1978) (excusing exhaustion after a twelve-year delay); *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 893 (3d Cir. 1975) (finding a delay of three years and four months inordinate and excusing exhaustion); *United States ex rel. Senk v. Brierley*, 471 F.2d 657, 660 (3d Cir. 1973) (finding a three-and-a-half year delay inordinate such that exhaustion should be

excused).

Petitioner's state habeas case has been pending since March 13, 2013 (ECF No. 72). The Court notes, however, that Petitioner's direct appeal was pending at the time Petitioner filed his state habeas case and that the direct appeal was not decided until November 20, 2015 (ECF No. 58-76). Given that several of the claims Petitioner raised in his state habeas case were also claims raised in his direct appeal, the Court recognizes that the Circuit Court may have been justified in unofficially staying Petitioner's habeas case while the West Virginia Supreme Court considered Petitioner's direct appeal. Even if that delay of two years and eight month was justifiable, however, Petitioner's direct appeal has now been decided for almost two years and his case has been before the Circuit Court for four-and-a-half years total. This length of time, while not dispositive, indicates that there has been an inordinate delay.

In cases where the length of the delay in state court proceedings is not so egregious as to be dispositive, courts rely on other factors to inform their decisions as to whether to excuse exhaustion. *See Tramel v. Idaho*, 459 F.2d 57, 58 (10th Cir. 1972) (finding a two-year delay suspect and remanding to the District Court for an evidentiary hearing on the cause of the delay); *Dixon v. Florida*, 388 F.2d 424, 426 (5th Cir. 1968) (finding a 19-month delay suspect and remanding to the District Court for an evidentiary hearing to determine whether the delay was justifiable); *Jones v. Crouse*, 360 F.2d 157, 158 (10th Cir. 1966) (ruling that the District Court could not dismiss a Section 2254 petition for failure to exhaust without knowing the facts and circumstances that gave rise to the state court delay, and remanding the case back to the trial court to determine whether the 18-month delay in the petitioner's state court proceedings rendered his state court remedies inadequate).

On September 7, 2017, this Court sought additional information from the Cabell County

Circuit Court concerning Petitioner's state habeas proceedings.[4] The documents obtained in that inquiry were filed as attachments to the Court's Order of September 17, 2017 (ECF Nos. 71, 72). Given the information in those documents, the Court finds that the record is now sufficient for a comprehensive review of the other factors relevant to consideration of Petitioner's request to excuse exhaustion.

### ii. Action in State Court

In conjunction with the length of delay in state court, courts also consider "the degree of progress made in state court." *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004). Where a state court case is proceeding normally, a federal court should not excuse exhaustion even if the case's progress in state court is slow. *See Burkett v. Cunningham*, 826 F.2d 1208, 1218 (3d Cir. 1987). *See also Cristin v. Brennan*, 281 F.3d 404, 411 (3d Cir. 2002) (not excusing exhaustion where, though the case had been pending for two years in state court, the court had held a hearing and ruled on the petition in that time); *Simmons v. Garman*, 2017 WL 2222526 at *3 (E.D.Pa. Feb. 14, 2017) (declining to excuse exhaustion where, during a 34-month delay, an amended petition was filed and counsel was appointed). The Third Circuit has noted that a federal court should "stay its hand" if there is evidence that a state court action is proceeding normally or has been "reactivated." *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995).

If, on the other hand, there is no indication that a state court case is achieving meaningful progress or nearing disposition, then the federal court should excuse exhaustion. *See Burkett*, 826 F.2d at 1218. *See also Lee*, 357 F.3d at 342 (excusing exhaustion after no real progress had been

---

[4] Though Magistrate Judge Aboulhosn directed Respondent to file sufficient records to facilitate an intelligent review of Petitioner's exhaustion efforts in state court (ECF No. 55), the vast majority of documents attached to Respondent's Second Motion to Dismiss pertained exclusively to Petitioner's direct appeal (*see* ECF No. 58 and attached exhibits). Finding the record inadequately developed on the matter of Petitioner's pending state habeas case, the Court obtained the state court records that Respondent failed to provide.

made in state court proceedings after eight years); *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986) (excusing exhaustion where the state court case had been pending without hearing for over two years); *Simmons v. Garman*, 2017 WL 2222526 at *3 (E.D.Pa. Feb. 14, 2017) (noting that exhaustion should be excused after three-year delays during which "no meaningful action towards resolution has been taken in the state court").

Petitioner asserts that "no significant progress" has been made in his state habeas proceedings since he filed his petition in March 2013 (ECF No. 65 at 20). In response, Respondent offers only a recitation of the case's history and an assertion that the "circuit court has provided every effort to allow Petitioner to properly adjudicate his claims. . ." (ECF No. 59 at 12).

The Court does not find support for Respondent's assertions in the record. In cases where courts have "stayed their hands" so as not to impede state court proceedings in which meaningful progress has been made, the courts have noted the importance of, for example, amended petitions being filed, court-appointed counsel being actively engaged, and hearings being held by the state courts.

Though Petitioner filed his state habeas case in 2013 and the case has now been pending for nearly five years, no amended petition has been filed on Petitioner's behalf, court-appointed attorneys have missed several court deadlines to file an amended petition, and the Circuit Court has not held any hearing (*see* ECF No. 72). Additionally, though the Circuit Court has appointed several attorneys to represent Petitioner, none of those attorneys has diligently met deadlines to file an amended petition on Petitioner's behalf (*see* ECF No. 72). The record is clear that the Circuit Court has failed to achieve meaningful progress in Petitioner's state habeas case in the four-and-a-half years it has been pending. In fact, Respondent admits in his Second Motion to Dismiss that Petitioner's state habeas proceedings "still appear[ ] to be in their infancy" (ECF No. 58 at 3). The

Court agrees.

### iii. Responsible Party

While the length of delay and progress in state court are both factors the Court should consider in determining whether a delay in state court is inordinate such that exhaustion should be excused, it is a general rule that the fault for any delay found to be inordinate must lie with the State and not with Petitioner. *Walkup v. Haines*, 2005 WL 2428163 at *3 (S.D.W.Va. Sept. 30, 2005). "To excuse the exhaustion requirement . . . the delay must be attributable to the state's procedures . . . and not attributable to petitioner's own actions." *Id.* (finding that a three-year delay was not inordinate where the petitioner contributed to the delay with voluminous filings and four separate addenda to his petition in the span of six months). *See also Matthews v. Evatt*, 51 F.3d 267 n.* (4th Cir. 1995) (unpublished decision) ("[T]he nearly four-year delay in this case does not excuse exhaustion because some of the delay is attributable to [the petitioner]"); *Farmer v. Cir. Ct. of Md. for Balt. Cty.*, 31 F.3d 219, 223 (4th Cir. 1994) (finding that exhaustion should not be excused where the petitioner was at fault for the delay in state court proceedings).

Petitioner argues that the delay in his state habeas proceedings are entirely the fault of the State. He asserts, "[T]his Court should find that the delay in [Petitioner's state habeas case] is exactly what it appears to be: the product of the trial court's recalcitrance and its ill-will toward the Petitioner" (ECF No. 65 at 134).

Respondent, on the other hand, argues that any delay is attributable to Petitioner on account of his quarreling with court-appointed counsel and his medical problems (ECF No. 59 at 12). Respondent argues, "[T]he State cannot be held responsible for delays cause[d] by Petitioner's failure to pursue his appeal, Petitioner's medical emergencies, or Petitioner's repeated and brash antagonistic behavior towards appointed counsel," and adds, "[the State has] done nothing to

obstruct Petitioner from seeking relief" (ECF No. 59 at 12). Respondent further asserts, "[T]here is no reason to believe that, absent Petitioner's own interference, Petitioner's State habeas proceedings will [not] proceed in a timely and efficient manner" (ECF No. 59 at 11).

This Court finds Respondent's characterization of the causes of the nearly five-year delay in Petitioner's state habeas case without merit. Respondent's assertion that the case will proceed in a timely and efficient manner from this point forward is frankly improbable. At the outset of Petitioner's state habeas case, the Circuit Court took nine months to contact Petitioner after he filed his habeas petition and an additional month thereafter to appoint counsel to file an amended petition on Petitioner's behalf (ECF No. 72). After the court's deadline for the amended petition passed without any amended petition having been filed, the court extended that deadline indefinitely by granting a motion to extend the deadline but failing to specify a new deadline or to enter any further order scheduling a new deadline (ECF Nos. 58-48, 72).

Then, without having set a new deadline for the amended petition, the court granted both Ms. Dixon's motion to withdraw as counsel in October 2014 and Mr. Cook's motion to withdraw as counsel in July 2015 (ECF No. 72). Though the court appears to have appointed new representation for Petitioner in October 2014 (ECF No. 58-58), Judge Ferguson's clerk admitted in December 2015 that she had failed to communicate that assignment to the newly-appointed attorney (ECF No. 72-3).

At the time the Circuit Court identified its own error in this miscommunication in December 2015, the Supreme Court of West Virginia had already ruled on Petitioner's direct appeal (ECF No. 58-78). Still, even after court identified and admitted its error, the court took no further steps in Petitioner's case for another five months (*see* ECF No. 72). After those five months passed, the court then erroneously ruled that Petitioner had waived his right to representation in

his state habeas proceedings and ordered Petitioner to file an amended petition with the threat of dismissal for failure to do so (ECF No. 72-4).

Petitioner brought the absence of his waiver of counsel to the court's attention in August 2016 in his motion to have new counsel appointed (ECF No. 72-7), but it took the court five months to respond to Petitioner's pro se motion and to appoint new counsel (*see* ECF No. 72-8). Finally, though the court appointed Mr. Meadows to represent Petitioner in January 2017, Mr. Meadows' representation has been inadequate at best. Mr. Meadows missed the court's May 2017 deadline for filing an amended petition, moved for more time to file a month-and-a-half after that deadline had already passed, and then missed a second filing deadline in August 2017 (*see* ECF No. 72). As of September 6, 2017, Mr. Meadows had still not filed an amended petition on Petitioner's behalf and there is no indication in the record that he intends to do so any time soon (*see* ECF No. 72).

While some of these delays are attributable to the court's management of its docket, others are more appropriately attributable to court-appointed counsel. Even so, delays caused by court-appointed counsel are attributable to the State and not to Petitioner in this context. *Walkup v. Haines*, 2005 WL 2428163 at *4 (S.D.W.Va. Sept. 30, 2005). "Unjustified delay by appointed counsel is not imputed to a *habeas* petitioner if he did not contribute to the delay." *Id.*

Respondent nevertheless argues that these delays on the parts of court-appointed counsel should be attributed to Petitioner because of Petitioner's "continued conflict with his attorneys" (ECF No. 59 at 12). Indeed, where courts have found that a petitioner's perpetual conflicts with his attorneys have caused the delay in his state court proceedings, they have attributed such delays to the petitioner and declined to excuse exhaustion. *See, e.g., Harper v. Ballard*, 2013 WL 285412 at *8 (S.D.W.Va. Jan. 24, 2013) (declining to excuse exhaustion where petitioner "consistently

acted without regard to his attorneys . . . and asked the circuit court judge several times to permit him to proceed *pro se*, while other times requesting that habeas counsel be appointed").

In other instances, however, courts have been unwilling to attribute state court delays to petitioners even where there has been conflict between those petitioners and their court-appointed attorneys. *See Wojtczak v. Fulcomer*, 800 F.2d 353, 354–55 (3d Cir. 1986). In *Wojtczak*, the Third Circuit considered a case substantially similar to the one now before this Court. *See id.* In that case, five different attorneys were appointed to represent the petitioner over a period of thirty three months. *Id*. at 354. The State argued that any delay in the case had been the "result of [the petitioner's] inability to cooperate with his lawyers." *Id*. After reviewing the record consisting "almost entirely" of letters exchanged between the petitioner and his attorneys, the court agreed that there was "no doubt" that the petitioner had been "quarrelsome" with his court appointed attorneys, but the court nevertheless ruled that the petitioner was not at fault for the delay. *Id*. at 354–55.

In explaining its decision, the Third Circuit pointed to the following: several of the petitioner's appointed attorneys had failed to respond to the petitioner despite the petitioner's repeated efforts to contact them; none of the attorneys had successfully filed an amended petition on the petitioner's behalf despite each of them having had several months to do so; and the state court had permitted each of the five attorneys to withdraw from the petitioner's case, sometimes without notifying the petitioner of the withdrawal beforehand. *Id*. at 355. Under these circumstances, the Third Circuit found that the "inexcusable delay" of thirty three months was "attributable to disinterest on the part of court appointed counsel and to a failure on the part of the court to require them to provide minimally effective representation." *Wojtczak*, 800 F.2d at 355.

In this case, Respondent contends that "Petitioner is already on his third set of counsel"

(ECF No. 59 at 12) but fails to mention that Petitioner's first appointed counsel withdrew because she took a job with the prosecutor's office, Petitioner's second appointed counsel withdrew because of conflicts with Petitioner in a separate matter, and Petitioner's third appointed counsel never even participated in Petitioner's case because the Circuit Court failed to inform him of his appointment. Now Petitioner is represented by a fourth attorney who, in the past nine months, has missed two filing deadlines without repercussion and still has neither filed an amended petition nor sought hearing on Petitioner's behalf.

Much like in *Wojtczak*, Respondent has produced dozens of letters between Petitioner and his appointed counsel, but most of these letters pertain to Petitioner's relationships with counsel in his direct appeal and none of them support a finding that Petitioner has been quarrelsome with the attorneys appointed in his state habeas case (*see* ECF No. 58 at 4–7). Even though there is evidence of conflict between Petitioner and Mr. Cook, who eventually withdrew from representation in both Petitioner's direct appeal and in his state habeas case, the conflict arose from matters involved in Petitioner's direct appeal and had little if anything to do with his pending state habeas case (*see* ECF No. 72-1).

Even if Petitioner could be blamed for Mr. Cook's withdrawal, there is no evidence to support a finding that Petitioner was at fault for Ms. Dixon's withdrawal from Petitioner's case, for Mr. Saad's failure to communicate with Petitioner, for the Circuit Court's failure to communicate with Mr. Saad, or for Mr. Meadows' failure to meet court deadlines and file an amended petition as directed. As it is "wholly untenable to penalize [petitioner] for his attorneys' failures and the [court's] inability to manage its own docket," *Story v. Kindt*, 26 F.3d 402, 406 (3d Cir. 1994), the delays in Petitioner's state habeas case cannot be held against Petitioner.

Accordingly, the Court finds that the delay in Petitioner's ongoing state habeas case is the

fault of the state court and the attorneys who have been appointed to represent Petitioner in his state court proceedings. As such, the delay is not attributable to Petitioner. Due to the four-and-a-half years of delay, the inaction of the state court within that time, and the fault of the State in causing the delay, the Court finds that the delay in Petitioner's ongoing state habeas case is inordinate.

### iv.   Justification for Delay

Even when the Court finds an inordinate delay attributable to the State, however, it may nevertheless require a petitioner to exhaust his state court remedies if the State can show cause for him to do so. "Although the existence of an inordinate delay does not automatically excuse exhaustion, it does shift the burden to the state to demonstrate why exhaustion should still be required – a burden that is difficult to meet." *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994).

As discussed above, the Court finds that the delay in Petitioner's state habeas case is inordinate. It is Respondent's responsibility, then, to demonstrate to the Court why Petitioner should nevertheless be required to exhaust his state court remedies before being heard in federal court. Respondent offers no such justification. In his Memorandum of Law filed in support of his Motion to Dismiss, Respondent gives a recitation of the facts of Petitioner's state habeas case but makes no effort to explain the substantial gaps in time between the events he recites (ECF No. 59 at 11). Instead he argues only that Petitioner is to blame for the delays and that the Court should therefore decline to excuse exhaustion (ECF No. 59 at 12). As discussed previously, the Court declines to attribute the state court delays to the actions of Petitioner and therefore rejects Respondent's argument.

Again, because Petitioner's direct appeal was not decided until November 20, 2015, the first two years and eight months of the delay at issue here may be justified in that it was judicially

efficient for the Circuit Court to wait for the West Virginia Supreme Court's ruling to proceed with Petitioner's similar claims in his habeas case. Even if the first part of the delay was justified, however, Respondent offers no justification for the ongoing delay that has persisted since that time.

"[W]hen it is perfectly apparent, as it is here, that a prisoner's requests to the state court and requests to state-appointed counsel have been to no avail, we have held that the prisoner need not take additional steps in the state court before he may be heard in the federal courts." *Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir. 1989). The Court finds that there has been a four-and-a-half year delay in Petitioner's state habeas case, that no meaningful progress has been achieved in the case since it was filed, and that the delay in progressing the case is attributable to the State both by failures of the state court and failures of court-appointed counsel. The Court additionally finds that no justification has been offered for the State's failures in communication or for the State's delay in achieving progress in this case since Petitioner's direct appeal was decided by the West Virginia Supreme Court in November 2015. As such, this Court finds that there has been an inordinate delay in Petitioner's state habeas case such that exhaustion should be excused for purposes of Petitioner's Section 2254 Petition now pending before this Court.

## VI.     Conclusion

For the foregoing reasons, the Court **ACCEPTS** Petitioner's objections as specified (ECF No. 70) and **REJECTS** the Magistrate Judge's Findings and Recommendation (ECF No. 66). Therefore, Respondent's Second Motion to Dismiss for Failure to Exhaust (ECF No. 58) is **DENIED** and Petitioner is **EXCUSED** from the exhaustion requirement of Section 2254.

Petitioner's Petition (ECF No. 1) is **REFERRED** back to the Magistrate Judge for further proceedings consistent with this Memorandum Opinion and Order.[5]

The Court **DIRECTS** the Clerk to forward copies of this written opinion and order to Magistrate Judge Aboulhosn, all counsel of record, and any unrepresented parties.

ENTER:      September 27, 2017

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[5] Still outstanding in this case are Petitioner's request for counsel to be appointed and Petitioner's unfiled Motion for Partial Summary Judgment (ECF No. 70 at 40–62). The Court does not reach these matters at this time. If Petitioner still wishes to have the matters considered, the Court directs Petitioner to raise them with the Magistrate Judge.