**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

| | |
|---|---|
| **CHARLES F. PLYMAIL,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Civil Action Nos. 3:14-06201** |
| ) | |
| **PATRICK A. MIRANDY, Warden,** ) | |
| ) | |
| **Respondent.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Petitioner's "Motion for Partial Summary Judgment" (Document No. 84), filed on January 15, 2018. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court deny Petitioner's above Motion and refer the matter back to the undersigned for further proceedings.

**PROCEDURAL AND FACTUAL HISTORY**

**A.      Criminal Action No. 93-F-50:**

On January 7, 1993, the Grand Jury of Cabell County, West Virginia, returned an Indictment against Petitioner charging him with one count of second degree sexual assault of K.Y.; one count of burglary of T.S.'s home; two counts of first degree sexual assault of T.S.; one count of first degree sexual abuse of T.S., and one count of maliciously wounding K.L. (T.S.'s roommate). State v. Plymail, Criminal Action No. 93-F-50 (Cir. Ct. Cabell Co. August 18, 2013). (Court's Exhibit, p. 2.) On August 4, 1993, the State decided to proceed to trial only on the sexual assault charge involving K.Y. because laboratory results concerning the remaining counts

1

were not yet available. (Id.) Following a two-day jury trial beginning on August 18, 1993, Petitioner was convicted of second-degree sexual assault of K.Y. (Id., p. 3.) On August 30, 1993, the State filed a recidivist information against Petitioner alleging that Petitioner had at least two prior felony convictions (1989 conviction for third-degree sexual assault; 1984 conviction for armed robbery). (Id.) On September 9, 1993, Petitioner appeared for his arraignment on the recidivist information, but the arraignment was continued at Petitioner's request. (Id., p. 4.) Petitioner was arraigned on February 14, 1994, and admitted his two prior felony convictions. (Id.) On February 22, 1994, the Circuit Court sentenced Petitioner to life in prison, with parole eligibility after serving 15 years. (Id.)

On March 9, 1994, Petitioner filed a Notice of Appeal. (Document No. 58-78.) On March 10, 1994, the Circuit Court appointed Ms. Nancy Sheets as appellate counsel (Id.) In his undisputed Declaration, Petitioner states that he informed Attorney Sheets that he wanted to "draft the appeal petition personally and have her serve as an editor/advisor." (Document No. 65, p. 5.) Petitioner states that Attorney Sheets agreed to this arrangement and he surrendered his case filed to her with the understanding that she would make a copy and return the file to him. (Id.) Petitioner, however, states that Attorney Sheets failed to return his file or respond to his phone calls and letters.[1] (Id.) On June 15, 1994, Petitioner filed a *pro se* Motion to Dismiss Court-Appointed Counsel and a Motion to Extend the Appeal Period. (Document No. 58-78.) On July 1, 1994, Petitioner filed in the West Virginia Supreme Court of Appeals ["WVSCA"] a *pro*

---

[1] On April 26, 1996, the West Virginia Lawyer Disciplinary Board determined that Attorney Sheets violated Rule 1.3 of the Rules of Professional Conduct and admonished Attorney Sheets for her delay in handling Petitioner's file, preparing his appeal, and failing to deliver documents as requested by Petitioner. (Document No. pp. 25 - 28.)

*se* Petition for Writ of Mandamus requesting that the Circuit Court be directed to rule upon the foregoing motions. (Document No. 1, p. 28.) On September 8, 1994, the WVSCA issued a rule commanding the respondent to appear and show cause why the writ should not be granted or, in the alternative, render the matter moot by appointing counsel to replace Attorney Sheets. (Document No. 1, p. 28 and Document No. 65, p. 31.) The Circuit Court, however, failed to take any action. (Document No. 65, p. 31.) By Order entered on December 2, 1994, the WVSCA issued mandamus directing Judge Ferguson to construe Petitioner's Motion to Extend Appeal Period as a Motion for Resentencing and to render a decision within 30 days as to Petitioner's Motion for Resentencing and Motion to Dismiss Ms. Sheets as Appellate Counsel. (Document No. 1, pp. 27 – 30 and Document No. 65, pp. 30 – 33.)

By Order entered on December 9, 1994, the Circuit Court relieved Ms. Sheets as counsel, appointed the Public Defender's Office of Cabell County as counsel, and directed the County Prosecutor to prepare and deliver to the Court an Order resentencing Petitioner for purposes of reinstating his appeal rights. (Document No. 58-78 and Document No. 70, pp. 30 - 31.) A resentencing Order was not prepared by the County Prosecutor within 30 days. (Document No. 65, p. 6.) Assistant Public Defender Neil Bouchillon was assigned to Petitioner's case and Mr. Bouchillon agreed to serve as Petitioners' "editor/advisor."[2] (Id. and Document No. 84, p. 2.) On January 11, 1995, Mr. Bouchillon obtained a stay of execution of sentence so that Petitioner

---

[2] In his Affidavit, Mr. Bouchillon states that Petitioner desired to prepare his own draft of an appeal petition and wished Mr. Bouchillon to be "standby counsel only." (Document No. 84, p. 2.) Mr. Bouchillon states that Petitioner's knowledge regarding the facts and legal issues in his case were "extensive." (*Id.*) Mr. Bouchillon explains that Petitioner showed him research he had done and "[i]t was apparent that he had a competent ability to prepare a petition." (*Id.*) Mr. Bouchillon, therefore, states that he saw no detriment to permitting Petitioner to prepare a draft of the appeal petition, which Mr. Bouchillon would then edit and submit. (*Id.*)

could remain at a county jail while he worked on the appeal. (Id. and Document No. 58-78.) On April 13, 1995, following an ex parte hearing between the Court and the County Prosecutor, an order was entered lifting the stay of execution of sentence. (Document No. 65, p. 35.) Mr. Bouchillon was not provided with a copy of the foregoing Order. (Id., pp. 35 and 37.) By letter filed on May 24, 1995, Petitioner suggested that Mr. Bouchillon file ethical complaints against the Circuit Court Judge and the County Prosecutor. (Document No. 65, p. 7.) On June 27, 1995, Mr. Bouchillon filed a Motion to Withdraw as Counsel. (Document No. 58-78) The Circuit Court conducted a hearing on the Motion to Withdraw on July 21, 1995. (Document No. 65, p. 7 and Document No. 84, p. 3.) During the above hearing, Petitioner and Mr. Bouchillon advised the court that they had resolved their differences and Mr. Bouchillon agreed to continue as counsel to act as Petitioner's "editor/advisor" concerning a petition for appeal drafted by Petitioner. (Id.) Following the hearing, the Circuit Court entered a Resentencing Order for purposes of reinstating his right to appeal.[3] (Document No. 1, pp. 36 - 37.) Mr. Bouchillon left the public defender's office in 1997 and Petitioner states he was not notified of such. (Document No. 65, p. 8.)

Petitioner took no further action to perfect his appeal until his parole was denied in January 2008. (Document No. 58-78.) On February 25, 2008, Petitioner filed a Motion to

---

[3]    Although Petitioner states that neither he, nor Mr. Bouchillon, received a copy of the resentencing Order entered on July 27, 1995, the record reveals that Petitioner requested the Court to address the issue of resentencing for the purposes of reinstating his appeal rights during the July 21, 1995 hearing. (Document No. 1, pp. 36 – 37 and Document No. 65, pp. 7 – 8, 39 - 40.) A Resentencing Order was subsequently entered by the Court on July 27, 1995. Although Petitioner should have been provided a copy of the Resentencing Order, it should also be noted that Petitioner made no further effort to check the status of the entry of the Resentencing Order. The status of the entry of Resentencing Order could have easily been obtained by contacting the Clerk's Office or requesting a copy of the Docket Sheet.

Disqualify Judge Ferguson,[4] Motion to Disqualify the Prosecutor's Office, and a Motion to Dismiss the Public Defender's Office. (Document No. 65, pp. 9, 51 – 52 and Document No. 58-78.) Petitioner states that Judge Ferguson failed to inform the Chief Justice of the WVSCA that a disqualification motion had been filed against him, and failed to stay the proceedings pending resolution of the disqualification motion. (Document No. 65, p. 10.) On February 26, 2008, the Circuit Court appointed Mr. Steven M. Bragg as counsel. (Document No. 58-78.) By letter dated March 6, 2008, Petitioner requested that Mr. Bragg mail him a copy of the resentencing order. (Document No. 58-3.) By letter dated March 7, 2008, Petitioner requested that the Circuit Court Clerk provide him with a copy of the Docket Sheet. (Document No. 58-4.) Mr. Bragg provided Petitioner with a copy of the Resentencing Order by letter dated March 10, 2008. (Document No. 58-5.) By letter dated November 12, 2008, Petitioner requested that Chief Public Defender Robert E. Wilkinson relinquish Mr. Bouchillon's file concerning Petitioner's case. (Document No. 58-6.) By letter dated November 14, 2008, Petitioner notified the WVSCA that he had filed a Motion to Disqualify Judge Ferguson and requesting that the Court disqualify Judge Ferguson. (Document No. 65, pp. 49 - 56.) On February 12, 2009, Petitioner filed a Complaint with the Lawyer Disciplinary Board against Chief Public Defender Robert E. Wilkinson. (Document No. 65, pp. 44 – 47.) On February 25, 2009, Mr. Bragg informed Petitioner by letter that the Public Defender's Office had located his file and would be mailing a

---

[4] In support, Petitioner argued that Judge Ferguson had not disposed of his Motion for Resentencing despite the WVSCA's issuance of mandamus directing that the Court resentence Petitioner. (Document No. 65, pp. 51 – 52.) The record, however, reveals that the Circuit Court resentenced Petitioner on December 9, 1994, and again on July 27, 1995. (Document No. 1, pp. 36 – 37 and Document No. 58-78.) Petitioner, however, states that he did not receive a copy of the Resentencing Orders. (Document No. 65.)

copy to both Petitioner and Mr. Bragg. (Document No. 58-11 and Document No. 58-12.) Petitioner indicates that in early 2009, he suffered from "non-responsive colitis." (Document No. 65, p. 11 and Document No. 58-13.) Petitioner indicates that he was unable to pursue his claims due to his medical condition, which was "cured" in 2012 by the removal of his colon. (Id.)

By letter dated July 19, 2012, Petitioner informed Mr. Bragg that he had recovered from his medical condition and requested that Mr. Bragg obtain a "re-sentencing order as soon as possible" because Petitioner had "an appeal petition completed and ready for filing." (Document No. 58-13.) By letter dated July 30, 2012, Mr. Bragg informed Petitioner that he would "be happy to review whatever documents and/or research you have regarding your case." (Document No. 58-14.) Mr. Bragg instructed Petitioner to forward copies to him at his earliest convenience. (Id.) On August 8, 2012, Petitioner provided Mr. Bragg with a copy of his Petition for Appeal for review and stated that he would be mailing a copy of the record which consisted of two volumes.[5] (Document No. 58-15.) On August 24, 2012, Petitioner provided Mr. Bragg with a copy of "both volumes of the proposed Appendix Record" and instructed Mr. Bragg as to how he wished for his appeal petition to be prepared. (Id.) By letter dated September 24, 2012, Mr. Bragg acknowledged receipt of Petitioner's "very well written and very well research" Petition for Appeal. (Document No. 58-79, p. 27.) Mr. Bragg further inquired as to whether it was Petitioner's "desire to file what you have written with me offering any suggested revisions and editing." (Id.) On September 28, 2012, Mr. Bragg filed a Motion for Resentencing. (Document No. 65, p. 12 and Document No. 58-79, pp. 13 - 15.) By letter dated October 10, 2012, Petitioner

---

[5] Petitioner indicated that he finished a rough draft of the appeal in 1995, but he had added much since that time. (Document No. 58-15.)

informed Mr. Bragg that he wanted to file the petition that Petitioner had drafted.[6] (Document

No. 58-17.) Petitioner stated that "if we can get my version of the appeal filed, I will have no

complaints." (Id.) Petitioner further stated that once Mr. Bragg had added Petitioner's requested

revisions and "we have a final draft that satisfies both of us, we can pursue resentencing in

whatever manner seems appropriate." (Id.)

By letter dated November 21, 2012, Petitioner requested that Mr. Bragg send him a copy

of the revised and completed appeal petition for review. (Document No. 58-18.) Petitioner

instructed Mr. Bragg that "at present, we do not need to prepare a resentencing motion or consult

with the prosecutor's office concerning the appendix record or take any step other than finishing

the actual petition." (Id.) By letter dated January 2, 2013, Mr. Bragg advised Petitioner that he

had filed the Motion for Resentencing in late September or early October and he called the

Judge's Office to schedule a hearing. (Document No. 58-20.) Mr. Bragg advised Petitioner that

Judge Ferguson's office had recently returned his call advising that no hearing was necessary and

for Mr. Bragg to prepare a proposed resentencing order for the purposes of perfecting an appeal.

(Id.) By letter dated January 16, 2013, Petitioner expressed that he was displeased that Mr. Bragg

had filed the Motion for Resentencing without his approval and requesting that Mr. Bragg retype

Petitioner's draft petition for appeal including Petitioner's revisions and send such to Petitioner

for review. (Document No. 58-21.) On January 28, 2013, Mr. Bragg filed a Motion to Substitute

Counsel (Document No. 58-22.) By Order entered on March 28, 2013, the Circuit Court granted

Mr. Bragg's Motion and appointed Mr. Nicolas Mayo as appellate counsel. (Id.)

---

[6] Petitioner indicates that he did not file his appeal petition 1995 because he was unaware that he had been resentenced. (Document No. 58-17.) A simple request for a copy of the Docket Sheet would have revealed to Petitioner that such a Resentencing Order had been entered.

By letter dated April 23, 2013, Petitioner informed Mr. Mayo of his "expectations" and instructions for preparing his appeal. (Document No. 58-25.) Specifically, Petitioner informed Mr. Mayo that he wanted him to "file the appeal that I prepared." (Id.) By letter dated June 4, 2013, Petitioner expressed that he was displeased with Mr. Mayo's delay in obtaining his draft appeal from Mr. Bragg, preparing the revised documents, and preparing a resentencing order. (Document No. 58-27.) Petitioner informed Mr. Mayo that if he was "too busy to handle these relatively minor tasks, then you should never had agreed to act as my appellate counsel." (Id.) On July 15, 2013, Petitioner filed with the Circuit Court a *pro se* Motion for Disposition. (Document No. 58-78 and 58-79, pp. 23 - 25.) On August 22, 2013, Petitioner filed a *pro se* Petition for Writ of Mandamus with the WVSCA. (Document No. 58-79.) By Scheduling Order entered on September 11, 2013, the WVSCA directed State file a Response to Petitioner's *pro se* Petition for Writ of Mandamus. (Id., p. 2.) On September 19, 2013, Mr. Mayo filed a proposed resentencing order and a Motion to Withdraw as Counsel. (Document No. 58-78.) The Circuit Court entered the Resentencing Order on September 20, 2013. (Document No. 58-79, pp. 30 - 31.) By Order entered on September 24, 2013, the Circuit Court granted Mr. Mayo's Motion to Withdraw as Counsel and appointed Jason Goad as counsel. (Document No. 58-78)

By letter dated October 21, 2013, Petitioner complained to Mr. Goad that Judge Ferguson had not ruled upon his Motion for Resentencing or entered a Resentencing Order.[7] (Document No. 58-28.) An Amended Resentencing Order was entered on November 13, 2013. (Document Nos. 58-29 and 58-78.) By letter dated November 22, 2013, Mr. Goad informed Petitioner that

---

[7] Contrary to Petitioner's assertion that no Resentencing Order had been entered, the record reveals that a Resentencing Order was entered by Judge Ferguson on September 20, 2013. (Document No. 58-78.)

the Resentencing Order had been entered and the Notice of Intent to Appeal was due by December 13, 2013. (Document No. 58-30.) Mr. Goad explained that he had a duty to read the transcripts to confirm what Petitioner had told him and to find any other possible issues. (Id.) Mr. Goad advised Petitioner that he was filing a Motion for Extension of Time to allow him adequate time to obtain and read the transcripts. (Id.) By letter dated November 26, 2013, Petitioner scolded Mr. Goad for not providing copies of the Resentencing Order with his letter stating that "common sense" should have prompted him to do so. (Document No. 58-32.) Petitioner also argued that a Notice of Appeal was unnecessary because Petitioner filed a timely Notice of Appeal in 1994. (Id.) Petitioner further stated that Mr. Goad could file another Notice of Appeal, but instructed Mr. Goad that a reading of the transcript was unnecessary and he should not delay filing the Notice. (Id.) Finally, Petitioner stated to Mr. Goad that any "competent attorney" would have already addressed the issue of locating and obtaining Petitioner's prior draft petition for appeal. (Id.)

By letter dated December 2, 2013, Mr. Goad provided Petitioner with a copy of the Resentencing Order and advised Petitioner that a Notice of Appeal was necessary. (Document No. 58-33.) Mr. Goad advised Petitioner that Mr. Mayo had been contacted regarding Petitioner's draft petition for appeal and Mr. Mayo stated that it would be delivered to Mr. Goad by the end of the week. (Id.) Mr. Goad, however, explained to Petitioner that he would not be filing anything that he had not prepared himself, but he would use the documents prepared by Petitioner as "input." (Id.) Mr. Goad stated that he was "not going to simply serve as a filing agent for [Petitioner]," and if Petitioner disagreed with such, he should proceed *pro se*. (Id.) Mr. Goad further stated that he was not going to file anything until he had "first hand knowledge of

the case," which he would obtain by reading the transcripts. (Id.) Mr. Goad explained that it was not only a duty he had as a lawyer, but "it is strategically the best option." (Id.) Mr. Goad advised Petitioner if he disagreed with the foregoing, or wished to proceed *pro se*, Petitioner should inform Mr. Goad and he would prepare a motion to withdraw as counsel. (Id.) By letter dated December 5, 2013, Petitioner advised Mr. Goad that his draft petition for appeal might benefit from "minor revision, but it is far superior to the poorly-researched, inarticulate tripe typically submitted on behalf of indigent criminal defendants." (Document No. 58-34.) Petitioner continued to argue that Mr. Goad was incorrect concerning the necessity of filing a Notice of Appeal. (Id.)

On December 23, 2013, Mr. Goad advised Petitioner that he was in receipt of all of Petitioner's "paperwork from Nick Mayo and am in the process of reviewing it." (Document No. 58-37.) By letter dated January 6, 2014, Mr. Goad advised Petitioner that he would be filing the attached Notice of Appeal on January 8, 2014. (Document No. 58-38.) Mr. Goad explained that the list of errors in the Notice were not "set in stone" and he would set up a phone conference with Petitioner to discuss additional issues. (Id.) Mr. Goad also explained to Petitioner that he disagreed with Petitioner's argument that "Judge Ferguson rushed the jury and threatened to hold the jury in contempt if they did not come to a verdict." (Id.) As promised, Mr. Goad filed Petitioner's Notice of Appeal on January 8, 2014. (Document No. 58-39.) By letter dated January 9, 2014, Petitioner informed Mr. Goad that "no competent attorney" could have reviewed the record and omitted the jury issue. (Document No. 58-43, p. 2 and Document No. 65, pp. 105 - 109.) By letter filed with the WVSCA on January 27, 2014, Petitioner informed the Court that Mr. Goad filed a Notice of Appeal that "does not comply with the Revised Rules of Appeal

Procedure." (Document No. 58-40.) Petitioner stated that Mr. Goad's failure to comply with the Rules was "inexplicable" to Petitioner because Petitioner had "carefully explained the relevance of the Revised Rules to Mr. Goad on two separate occasions." (Id.) Petitioner further informed the WVSCA that Mr. Goad filed the Notice of Appeal without his approval and "it raises one frivolous issue and, most importantly, fails to raise one meritorious issue." (Id.)

On January 28, 2014, the WVSCA entered its Scheduling Order requiring Petitioner's appeal to be perfected by May 14, 2014. (Document No. 58-41.) On the same day, the WVSCA denied Petitioner's *pro se* Petition for Writ of Mandamus. (Document No. 58-79, p. 32.) On March 14, 2014, Petitioner filed in the WVSCA a *pro se* "Petition for Writ of Prohibition" requesting that Judge Ferguson be prohibited from appointing "any more attorneys to 'assist' with Petitioner's appeal, or taking any further action in the case, pending the Court's resolution of Petitioner's Motion for Disqualification of Judge Ferguson. (Document No. 7, pp. 5 - 19.) By letter dated March 25, 2014, Petitioner accused Mr. Goad of backdating letters, being incompetent, and sabotaging his appeal. (Document No. 58-43.) By letter filed with the WVSCA on March 27, 2014, Petitioner advised the Court "of a complete breakdown in the attorney-client relationship." (Document No. 58-43.) By letter dated April 1, 2014, Mr. Goad advised Petitioner that he was filing a Motion to Withdraw as Counsel. (Document No. 58-44.) On April 2, 2014, Mr. Goad filed with the WVSCA a Motion to Withdraw as Counsel (Document No. 58-45.) By Order entered on April 17, 2014, the WVSCA granted Mr. Goad's Motion and remanded the case to the Circuit Court for the sole purpose of appointing new counsel. (Document No. 58-46 and 58-47.) The WVSCA further stayed the appeal pending the appointment of new counsel by the Circuit Court. (Document No. 58-46.)

By Order entered on May 29, 2014, the Circuit Court appointed Mr. Ray Nolan as appellate counsel. (Document No. 58-49.) By "Amended Order of Appointment" entered on June 3, 2014, the Circuit Court appointed Mr. Steve Cook[8] as appellate counsel. (Document No. 58-50.) By Order entered on June 16, 2014, the WVSCA directed that Petitioner file an Amended Notice of Appeal by July 22, 2014. (Document No. 58-51.) By letter dated July 3, 2014, a staff attorney for the WVSCA notified Petitioner that "no new case is being docketed on your behalf" based upon his *pro se* Petition for Writ of Prohibition because Petitioner was represented by counsel. (Document No. 7, p. 26.) By letter dated July 3, 2014, Petitioner provided Mr. Cook with a copy of his appeal petition and requested that Mr. Cook "give the draft petition the attention it deserves." (Document No. 58-52.) On July 22, 2014, Mr. Cook filed an "Amend Notice of Appeal." (Document No. 58-53.) By letter dated August 21, 2014, Petitioner provided Mr. Cook with arguments and case law that he wished to be included in his Appellate Brief. (Document No. 7, pp. 37 – 42.) By letter dated September 17, 2014, Petitioner advised Mr. Cook that he did not consent to the filing of the Appellate Brief without his review of the document. (Document No. 58-54.) Petitioner instructed Mr. Cook to obtain an extension of the Scheduling Order as to allow him time to review the Appellate Brief. (Id.) Petitioner further complained that Mr. Cook had filed an "Amended Notice of Appeal" that was "filled with errors," which exhibited that Mr. Cook was not "very familiar with the facts of [his] case or the law relevant to those facts." (Id.) Petitioner stated that he was the "most qualified" to review the Appellate Brief "to detect and correct errors." (Id.) On September 18, 2014, Petitioner filed in the WVSCA a copy of the September 17, 2014 letter addressed to Mr. Cook. (Id.) The WVSCA granted the

---

[8] Mr. Cook had been recently appointed as co-counsel on Petitioner's State *habeas* case.

Motion for Extension of Time allowing Petitioner until October 27, 2014 to perfect his appeal. (Document No. 87-57.) By letter dated October 7, 2014, Petitioner complained to Mr. Cook that he had not yet received a copy of the Appellate Brief for review. (Id.) By letter dated October 13, 2014, Petitioner accused Mr. Cook of wanting an "easy case" and not devoting appropriate time to his case. (Document No. 58-57.) On October 24, 2014, Mr. Cook, with the consent of Petitioner, filed a Motion to Amend the Scheduling Order. (Document No. 58-59.) In support, Mr. Cook explained that he was delayed in completing the Appellate Brief because he had recently received from *habeas* counsel documents in support of one of the issues and additional time was necessary for Petitioner to review the Brief prior to filing. (Id.) The WVSCA granted Motion. (Document No. 58-61.)

On November 18, 2014, Mr. Cooked filed Petitioner's Appellate Brief. (Document No. 58-60.) Petitioner asserted the following assignments of error:

1.    Whether the extraordinary delay in Appellant/Petitioner's right to an appeal should afford Appellant/Petitioner immediate relief in the form of release from prison coupled with an injunction to prevent further prosecution?

2.    Whether the trial court committed plain error and/or reversible error by the trial court's comments to the jury during the deliberation phase and the trial courts limitations on the time frame for completing the trial and jury deliberations and whether the trial court committed plain error and/or reversible error by coercing the jurors into agreeing upon the verdict?

3.    Whether the trial court lacked jurisdiction to use the recidivist statute to enhance Petitioner's conviction to a life sentence, because said enhancement was not done in the same term of Court as the conviction as required by statute?

4.    Whether the Petitioner was misled into waiving his right to testify?

5.    Whether the trial court erred in permitting the prosecutor to use inflammatory language in closing argument, state facts not in evidence in

closing argument, as well as appeal to local and general prejudices in closing argument, allowing the prosecutor to discuss and attack Petitioner's pre-trial silence in closing argument, allowing the prosecutor to discuss Petitioner's failure to present witnesses in closing argument, allowing the prosecutor to comment on the Petitioner's failure to testify?

6.      Whether the trial court failed to give a proper in camera hearing and a definitive ruling as to the State's proffered evidence under Rule 404(b) of the West Virginia Rules of Evidence?

7.      Whether the totality of the errors involved, coupled with the totality of the circumstances involved, combined with the extraordinary delay in bring a direct appeal (20) years through no fault of the Petitioner should afford the Petitioner the relief involved?

(Id.) By letter dated December 3, 2014, Petitioner expressed to Mr. Cook that he was dissatisfied with the Appellate Brief because Mr. Cook had failed to "point-out relevant facts and circumstances." (Document No. 7, pp. 35 – 36.) On December 22, 2014, the State requested an extension of time to file a Response Brief. (Document No. 58-63.) By Amended Scheduling Order entered on December 31, 2014, the WVSCA allowed the State until January 23, 2015, to file its Brief. (Document No. 58-64.) By letter dated January 15, 2015, Petitioner informed Mr. Cook that the "appeal brief contains a number of serious errors: incomplete quotes, incorrect transcript citations, factual misstatements, non-sensical sentences, and entire paragraphs that are virtually incomprehensible." (Document No. 7, p. 44.) The State subsequently requested an additional extension of time and the WVSCA entered an Amended Scheduling Order on January 22, 2015, allowing the State until February 6, 2015, to file its Brief. (Document Nos. 58-65 and 58-66.)

By letter dated February 4, 2015, Petitioner notified Mr. Cook that he waived his "right to any further assistance from you and your kind." (Document No. 58-71.) Petitioner complained

that Mr. Cook caused delay in his case and filed an "inadequate appendix record" and a "sloppy, inept brief." (Id.) Petitioner complained that Mr. Cook failed to properly argue issues, used incorrect citations and incomplete quotes, and overlooked case law. (Id.) Petitioner stated that Mr. Cook was "incapable of preparing a competent response to the State's Reply Brief." (Id.) By letter received February 5, 2015, Petitioner provided the WVSCA with a "Waiver of Counsel." (Document No. 58-70.) On February 6, 2015, the State filed its Response Brief. (Document No. 58-67.) On February 13, 2015, Mr. Cook filed a Motion to Withdraw as Counsel. (Document No. 58-72.) By Order entered on February 24, 2015, the WVSCA granted Mr. Cook's Motion to Withdraw as Counsel and directed Petitioner to file his Reply Brief by March 30, 2015. (Document No. 58-73.) On February 25, 2015, Petitioner, acting *pro se*, filed his Motion for Enlargement of Time, which the WVSCA granted. (Document No. 58-74.) On March 30, 2015, Petitioner filed his *pro se* Reply Brief. (Document No. 58-75.) By Memorandum Decision filed on November 20, 2015, the WVSCA affirmed Petitioner's conviction and sentence. State v. Plymail, No. 14-0016 (Nov. 20, 2015); (Document No. 58-76.)

**B.    State *Habeas* Petition:**

On March 13, 2013, Petitioner, proceeding *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Cabell County. Plymail v. Plumley, Case No. 13-C-159 (Cir. Ct. Cabell Co.); (Document No. 28-1.) Petitioner raised the following grounds for *habeas* relief:

1.    The inordinate delay of Petitioner's appeal;

2.    The trial court's coercive remarks to the jury;

3.    The prosecutor's plainly improper closing argument;

4.    Improper sentencing enhancement;

15

5.      Denial of Petitioner's right to testify; and

6.      Ineffective assistance of trial counsel.

(Document No. 1, p. 3.) By letter dated November 26, 2013, Stacy Adkins, Judge Ferguson's law clerk, inquired as to whether Petitioner wished to proceed with his *habeas* petition or to stay proceedings pending resolution of his direct appeal. (Document No. 58-31.) By letter received on December 11, 2013, Petitioner promptly informed Ms. Adkins that he did not wish to have his *habeas* proceedings stayed and that he would like to have *habeas* counsel appointed. (Document No. 58-35.) By Order entered on December 13, 2013, the Circuit Court appointed Ms. Sarah Dixon as *habeas* counsel and directed that an Amended Petition be filed no later than May 1, 2014. (Document No. 28-1 and 58-36.) Also on December 13, 2013, the State filed its Answer. (Document No. 58-76.) Petitioner states that Ms. Dixon "waited two additional months to inform me of her appointment." (Document No. 65, p. 20.) By Order entered on May 2, 2014, the Circuit Court appointed Mr. Steven Cook as co-counsel and granted Petitioner an extension of time "to a date to be determined by the Court" to file an Amended Petition. (Document No. 28-1 and 58-48.) Petitioner states that in July 2014, he wrote Ms. Dixon explaining that he thought an evidentiary hearing on the appellate delay issue was necessary. (Document No. 65, p. 20.) Petitioner states that Ms. Dixon responded in July 2014, by "flatly refusing to prepare an amended petition, interview any of my former appellate attorneys, or otherwise develop the record on the delay issue" and asserting that it was in Petitioner's "best interest" to wait until the WVSCA decided his direct appeal. (Id.) Subsequently, Ms. Dixon accepted employment in the Cabell County Prosecutor's Office and filed a motion to withdraw as counsel. (Id.) On October 17, 2014, Ms. Dixon was relieved as counsel and Abraham Saad was appointed as counsel.

(Document No. 28-1 and Document No. 58-58.) The Court directed that the Clerk of the Court provide a certified copy of the Order to Ms. Dixon, Mr. Saad, Mr. Cook, and the County Prosecutor. (Document No. 58-58.)

By letter dated February 4, 2015, Petitioner notified Mr. Cook that he was dissatisfied with Mr. Cook's work on his direct appeal and waived his "right to any further assistance from you and your kind." (Document No. 58-71.) By letter received February 5, 2015, Petitioner provided the WVSCA with a "Waiver of Counsel" concerning his direct appeal. (Document No. 58-70.) On February 13, 2015, Mr. Cook filed in the WVSCA a Motion to Withdraw as Counsel. (Document No. 58-72.) By Order entered on February 24, 2015, the WVSCA granted Mr. Cook's Motion to Withdraw as Counsel concerning Petitioner's direct appeal. (Document No. 58-73.) By Motion dated June 29, 2015, Mr. Cook requested that the Circuit Court allow him to withdraw as *habeas* co-counsel.[9] (Document No. 72-1.) On June 30, 2015, the Circuit Court granted Mr. Cook's Motion to Withdraw as Co-Counsel and stated that "[a] separate order appointing new counsel will be entered as necessary." (Document No. 58-76 and 72-2.) The Clerk was directed to send a copy of the Order removing Mr. Cook as co-counsel to Mr. Saad. (Document No. 72-2.)

Petitioner states that Mr. Saad made no attempt to communication with him despite that fact that Mr. Saad was appointed as *habeas* counsel. (Document No. 65, p. 20.) In November 2015, Petitioner filed an ethical complaint against Mr. Saad. (Document No. 72-7.) Petitioner states that Mr. Saad responded to the Office of Disciplinary Counsel that Ms. "Dixon had failed to inform him of his appointment" and the Circuit Court "had not provided him with a copy of the order of appointment." (Document No. 65, p. 20.) By letter dated December 1, 2015, Ms.

---

[9] This Motion was filed on July 2, 2015.

Adkins, Judge Fergusons' law clerk, advised the Lawyer Disciplinary Counsel that the "present miscommunication" was caused by the withdrawal order prepared by Ms. Dixon that substituted Mr. Saad as counsel. (Document No. 72-3.) Law Clerk Adkins explained that "[a]lthough this order was signed and entered by Judge Ferguson, Mr. Cook was serving as Mr. Plymail's appointed counsel." (Id.) Law Clerk Adkins stated that Mr. Saad "had expressed reservation about representing Mr. Plymail" and "I did not think we needed to appoint Mr. Saad" because "Mr. Cook was already appointed counsel." (Id.) Law Clerk Adkins stated that the Circuit Court did not appoint new counsel following the withdrawal of Mr. Cook because "Mr. Plymail did not want representation or request new counsel." (Id.) Law Clerk Adkins claimed that she "was unaware Mr. Saad was on this case" and "it logically follows that Mr. Saad was unaware he was on the case." (Id.) Finally, Law Clerk Adkins stated that she "asked Mr. Saad to draft an Amended Order removing him as counsel of record for Mr. Plymail's habeas case." (Id.) There is no indication in the record that Mr. Saad ever prepared such an Order. (Document No. 72.)

Following the Circuit Court's granting of Mr. Cook's motion to withdraw as counsel on June 30, 2015, Petitioner's State *habeas* proceedings laid dormant until May 18, 2016. (Id.) On May 18, 2016, the Circuit Court entered a Scheduling Order noting that "Petitioner had previously indicated he did not wish to have an attorney and thus is representing himself." (Document No. 72-4.) The Circuit Court directed that Petitioner file his Amended Petition by July 1, 2016 (approximately six weeks from the date of the Scheduling Order), "or the matter will be dismissed from the docket of this Court." (Id.) On June 29, 2016, Petitioner filed a *pro se* Motion for Extension of Time. (Document No. 72-5.) By Order entered on July 7, 2016, the Circuit Court granted Petitioner's Motion for Extension of Time allowing him until September 1,

2016, to file his Amended Petition. (Document No. 72-6.) On August 30, 2016, Petitioner filed a Motion to Replace Court Appointed Counsel. (Document No. 72-7.) In support, Petitioner stated that he had never filed a motion, letter, or other document waiving his right to counsel in his *habeas* case. (Id.) By Order filed January 18, 2017, the Circuit Court granted Petitioner's Motion, appointed Mr. Michael Meadows as *habeas* counsel, and extended the deadline for Petitioner to file his Amended Petition and Losh List until May 1, 2017. (Document No. 72-8.) On June 16, 2017, more a month and half after the filing deadline, Mr. Meadows filed a Motion requesting an extension of time to file Petitioner's Amended Petition. (Document No. 72-9.) By Order entered on June 21, 2017, the Circuit Court granted Mr. Meadows' Motion extending the filing deadline to August 31, 2017. (Document No. 72-10.) Nearly a month after the passing of his deadline, Mr. Meadows filed an additional Motion for Extension of Time on September 29, 2017. (Document No. 88-27.) The Circuit Court granted the Motion on October 4, 2017. (Id.) The most recent Docket Sheet from the Circuit Court reveals that no Amended Petition had been filed by Mr. Meadows as of February 22, 2018. (Id.)

**C.     Section 2254 Petition:**

Petitioner filed the instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus By a Person in State Custody* on January 31, 2014. (Document No. 1.) In his Petition, Petitioner alleges the following grounds for *habeas* relief (Id., pp. 10 - 25.):

1.     The State's 19-year delay in affording [Petitioner] an appeal of [his] criminal conviction violates the due process provisions of the Fourteenth Amendment to the United States Constitution.

2.     Because the jurors at [Petitioner's] trial were subjected to judicial coercion, [his] conviction was obtained in violation of the due process provisions of the Fourteenth Amendment of the United States Constitution.

3.    The plainly improper remarks made by the prosecutor during the State's rebuttal and closing were prejudicial enough to have denied [Petitioner] the right to a fair trial and, thus, violated the due process provision of the Fourteenth Amendment to the United States Constitution.

4.    Because [Petitioner's] waiver of the right to testify was based on misleading statements made by the court and counsel, [his] conviction was obtained in violation of the due process provisions of the Fourteenth Amendment to the United States Constitution.

5.    Because the trial court lacked jurisdiction to enhance [Petitioner's] sentence under West Virginia's recidivist statute, its imposition of a life sentence violated the due process provisions of the Fourteenth Amendment to the United States Constitution.

6.    Because [Petitioner] was not provided with effective assistance of counsel, [his] conviction was obtained in violation of the Sixth Amendment to the United States Constitution.

(Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of an Order from the WVSCA filed on December 2, 1994, granting Petitioner's writ of mandamus directing Circuit Court Judge Alfred E. Ferguson, Jr., "to render a decision within thirty days of this order on the relator's motion to amend the dismissal order, motion for resentencing, and motion to dismiss Ms. Sheets as appellate counsel" (Document No. 1, pp. 27 - 30.); (2) A copy of Judge Ferguson's Order dated April 12, 1995, transporting Petitioner to the care, custody, and control of the Commissioner of Corrections (Id., p. 32.); (3) A copy of a letter from the Public Defender's Office addressed to Petitioner dated May 24, 1995 (Id., p. 34.); (4) A copy of Petitioner's "Re-Sentencing Order" dated July 21, 1995, as filed in the Circuit Court of Cabell County (Id., pp. 36 - 37.); (5) A copy of a letter from Petitioner addressed to Rory L. Perry, Clerk of the WVSCA, dated November 14, 2008 (Id., p. 39.); and (6) A copy of a letter from Petitioner

20

addressed to Chief Justice Elliot E. Maynard dated November 14, 2008 (Id., pp. 40 - 42.).

On February 23, 2015, Petitioner filed his "Supplemental Factual Statement and Exhibits F - M." (Document No. 7.) As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Petition for Writ of Prohibition" as filed with the WVSCA on March 14, 2014 (Id., pp. 5 - 19.); (2) A copy of a letter from Petitioner addressed to Attorney Jason P. Goad dated March 25, 2014 (Id., pp. 21 - 24.); (3) A copy of a letter from Adriana Marshall, Staff Attorney with the WVSCA, addressed to Petitioner dated July 3, 2014 (Id., p. 26.); (4) A copy of a letter from Petitioner addressed to Ms. Marshall dated October 22, 2014 (Id., pp. 28 - 29.); and (5) A copy of letters from Petitioner addressed to Mr. Steven T. Cook, court-appointed counsel, dated October 7, 2014, December 3, 2014, August 21, 2014, January 15, 2015, and February 4, 2015 (Id., pp. 31 - 47.).

By Order entered on February 23, 2015, the undersigned directed Respondent to file a Response to Petitioner's Petition. (Document No. 8.) On March 25, 2015, Respondent filed his Response and "Motion to Dismiss and Incorporated Memorandum." (Document Nos. 13 and 14.) In his "Motion to Dismiss and Incorporated Memorandum," Respondent argued that "Petitioner has yet to exhaust his claims within the State courts, and has yet to have either his direct appeal or his *habeas* claims properly adjudicated by the SCAWV." (Id.) On April 9, 2015, Petitioner filed his Responses in Opposition and Memorandum in Support. (Document Nos. 18 and 19.) Petitioner argued that the "inordinate and unjustified delay in adjudicating post-conviction claims for relief renders the state judicial process ineffective." (Document No. 19, p. 2.) Respondent filed his Reply on April 10, 2015. (Document No. 20.)

By Proposed Findings and Recommendation entered on December 21, 2015, Judge

VanDervort recommended that Petitioner's Petition be dismissed without prejudice based upon his failure to exhaust. (Document No. 31.) Petitioner filed his Objections on January 11, 2016. (Document No. 36.) By Memorandum Opinion and Order entered on March 30, 2016, United States District Judge Robert C. Chambers adopted Judge VanDervort's recommendation and dismissed Petitioner's Petition without prejudice. (Document Nos. 38 and 39.) By per curiam opinion entered on November 23, 2016, the Fourth Circuit vacated and remanded the District Court's decision. (Document No. 50.) The Fourth Circuit determined "that the current state of the record is insufficient to establish as a matter of law that Plymail's petition should be dismissed for failure to exhaust." (Id.)

By Order entered on December 21, 2016, the undersigned directed Respondent to file a Response addressing Petitioner's Section 2254 Petition. (Document No. 55.) The undersigned further directed that to the extent Respondent wished to seek dismissal based upon Petitioner's failure to exhaust, Respondent should specifically address Petitioner's claim that he is excused from the exhaustion requirement because there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of Petitioner. (Id.)

On February 2, 2017, Respondent filed his Answer, "Second Motion to Dismiss for Failure to Exhaust," and Memorandum of Law in Support. (Document Nos. 57, 58, 59.) First, Respondent acknowledged that Petitioner's direct appeal exhausted the majority of Petitioner's claims. (Document No. 58, p. 2.) Respondent, however, noted that Petitioner's claim of ineffective assistance of counsel had not been exhausted. (Id.) Second, Respondent stated that Petitioner's State *habeas* proceedings are ongoing and the resolution of these proceedings will result in exhaustion of Petitioner's ineffective assistance of counsel claim. (Id.) Third,

Respondent argued that "the delay of Petitioner's State proceedings, in both his direct appeal and State *habeas* proceedings, is in part a result of Petitioner's constant quarreling with appointed counsel." (Id.) As Exhibits, Respondent attaches 79 documents that include Petitioner's communications with counsel, State Court filings, and a copy of Docket Sheets from the Circuit Court. (Document No. 58.)

On February 3, 2017, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's "Second Motion to Dismiss for Failure to Exhaust." (Document No. 60.) On March 17, 2017, Petitioner filed his "Declaration in Opposition to Respondent's Motion to Dismiss" (Document No. 65, pp. 4 – 22) and "Memorandum of Law in Opposition to Respondent's Motion to Dismiss" (Id., pp. 124 - 139). Specifically, Petitioner argued that he should be excused from exhaustion because the "20-year delay in the appellate process is inordinate." (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of a decision by the Lawyer Disciplinary Board's Investigative Panel dated April 26, 1996 (Document No. 65, pp. 25 – 28.); (2) A copy of the WVSCA's Order filed on December 2, 1994, granting Petitioner's Petition for Writ of Mandamus (Id., pp. 30 – 33.); (3) A copy of the Circuit Court's Order lifting the stay of execution of sentence entered on April 13, 1995 (Id., p. 35.); (4) A copy of a letter from Mr. Bouchillon dated May 24, 1995 (Id., p. 37.); (5) A copy of the Resentencing Order entered on July 27, 1995 (Id., pp. 39 - 40.); (6) A copy of a letter from Mr. Bouchillon dated August 31, 1995 (Id., p. 42.); (7) A copy of Petitioner's "Complaint Form" dated February 12, 2009, as submitted to the Lawyer Disciplinary Board (Id., pp. 44 – 48.); (8) A copy of a letter from Petitioner addressed to Chief Justice Elliot E. Maynard dated November 14, 2008 (Id., pp. 49 –

57.); (9) A copy of Petitioner's draft "Petition for Appeal" (Id., pp. 58 – 101.); (10) A copy of a letter from Mr. Bragg dated September 24, 2012 (Id., p. 103.); (11) A copy of a letter from Petitioner addressed to Mr. Goad dated January 9, 2014 (Id., pp. 105 – 109.); (12) A copy of a letter from Petitioner addressed to Mr. Cook dated August 13, 2014 (Id., pp. 111 – 120.); and (13) A copy of a letter from Mr. Cook dated November 11, 2014 (Id., pp. 121.).

By Proposed Findings and Recommendations entered on May 23, 2017, the undersigned recommended that the District Court grant Respondent's "Second Motion to Dismiss for Failure to Exhaust" (Document No. 58) and dismiss without prejudice Petitioner's Section 2254 Petition. (Document No. 66.) On June 30, 2017, following the granting of an extension of time, Petitioner filed his Objections. (Document No. 70.) By Memorandum Opinion and Order entered on September 27, 2017, United States District Judge Robert C. Chambers accepted Petitioner's Objections, rejected the undersigned's recommendation, denied Respondent's "Second Motion to Dismiss for Failure to Exhaust," directed that Petitioner was excused from the exhaustion requirement of Section 2254,[10] and referred the matter back to the undersigned for further proceedings. (Document No. 74.) On September 27, 2017, the undersigned conducted a hearing via video conferencing for purposes of determining whether Petitioner wished to have counsel appointed concerning his Section 2254 proceedings. (Document No. 75.) During the hearing, Petitioner affirmed his request for appointment of counsel and the undersigned granted his request by appointing Troy Giatras as counsel. (Id.) The undersigned further directed that Petitioner had until November 28, 2017 to file any Amended Section 2254 Petition and Respondent should file his Answer within 45 days after the filing of any Amended Petition. (Id.)

---

[10] Specifically, the District Court determined that there had been an inordinate delay in

Following the granting of two extensions of time for the filing of an Amended Petition, Petitioner, by counsel, filed his Motion for Partial Summary Judgment and Memorandum in Support on January 15, 2018. (Document Nos. 84 and 85.) In support, Petitioner argues that he is entitled to partial summary judgment on his claim that a twenty-year delay in his State appeal violated the Due Process Clause. (Id.) As Exhibits, Petitioner attaches the following: (1) The Affidavit of Neil R. Bouchillon (Document No. 84-1.); and (2) A copy of "Petitioner's Supplemental Appendix Record" as filed with the WVSCA on March 27, 2015, which includes attorney-client correspondences and Petitioner's letters to the Circuit Clerk (Document No. 84-2.).

On March 1, 2018, Respondent filed his Answer, "Motion for Summary Judgment," Memorandum in Support, and "Response in Opposition to Petitioner's Motion for Partial Summary Judgment." (Document Nos. 88, 89, 91, 92.) As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's Indictment as filed in State v. Plymail, Case No. 93-F-50 (Cir. Ct. Cabell Co. Feb. 22, 1994) (Document No. 88-1.); (2) A copy of Petitioner's Pretrial Motions as filed in Case No. 93-F-50 (Document No. 88-2.); (3) A copy of the Circuit Court's "Order to Produce Psychiatric Records" Order denying Petitioner's Motion (Document No. 88-3.); (4) A copy of the Circuit Court's "Order Denying Various Defendant Joint Motions" (Document No. 88-4.); (5) A copy of Petitioner's conviction order (Document No. 88-5.); (6) A copy of Petitioner's Recidivist Information (Document No. 88-6.); (7) A copy of Petitioner's *pro se* Motion to Dismiss Information (Document No. 88-7.); (8) A copy of the Circuit Court's Order denying Petitioner's Motion to Set Aside the Verdict and Motion to Dismiss Information

---

Petitioner's State *habeas* proceedings. (Document No. 74.)

(Document No. 88-8.); (9) A copy of Petitioner's "Amended Re-Sentencing Order" as filed on November 13, 2013 (Document No. 88-9.); (10) A copy of Petitioner's Appeal Brief as filed with the WVSCA on November 18, 2014 (Document No. 88-10.); (11) A copy of the State's Response Brief as filed with the WVSCA on February 6, 2015 (Document No. 88-11.); (12) A copy of Petitioner's *pro se* Reply Brief as filed with the WVSCA on March 30, 2015 (Document No. 88-12.); (13) A copy of the WVSCA's "Memorandum Decision" filed on November 20, 2015, affirming the decision of the Circuit Court (Document No. 88-13.); (14) A copy of Petitioner's *pro se* Petition for Writ of *Habeas Corpus* as filed with the Circuit Court of Cabell County (Case No. 13-C-159) (Document No. 88-14.); (15) A copy of the transcripts from Petitioner's Preliminary Hearing conducted on September 25, 1992, in Case No. 93-F-50 (Document No. 88-15.); (16) A copy of the transcripts from the hearing conducted on March 12, 1993 and March 17, 1993, concerning Petitioner's pro se motion to dismiss appointed counsel (George D. Beter) in Case No. 93-F-50 (Document Nos. 88-16 and 88-17.); (17) A copy of the transcripts from a pretrial hearing conducted on April 26, 1993 and May 12, 1993, concerning a Motion to Quash a Subpoena for Reporter David Rogers, Motion to Disqualify the Prosecutor's Office, Motion for a Change in Venue, and Motion to Suppress as filed in Case No. 93-F-50 (Document Nos. 88-18 and 88-19.); (18) A copy of the trial transcripts as filed in Case No. 93-F-50 (Document Nos. 88-20 and 88-21.); (19) A copy of the transcripts from a post-trial hearing conducted on September 9, 1993, concerning Petitioner's Motion to Renew the Motion for Judgment of Acquittal and his Motion to Set Aside the Verdict in Case No. 93-F-50 (Document No. 88-22.); (20) A copy of the transcripts from the post-trial hearing conducted on December 1, 1993, December 6, 1993, December 20, 1993, and February 14, 1994, concerning

26

Petitioner's Motion to Set Aside the Verdict in Case No. 93-F-50 (Document Nos. 88-23, 88-24, 88-25, and 88-26.); (21) A copy of the transcripts from Petitioner's post-trial hearing concerning this Motion to Dismiss Information and Sentencing hearing conducted on February 14, 1994, in Case No. 93-F-50 (Document No. 88-26.); and (22) A copy of the Circuit Court's Docket Sheet for Petitioner's State *habeas* case (Case No. 13-C-159) (Document No. 88-27.).

On April 30, 2018, Petitioner, by counsel, filed his "Memorandum in Reply to Respondent's Response in Opposition to Petitioner's Motion for Partial Summary Judgment" (Document No. 96), a "List of Undisputed Facts" (Document No. 96-1), and his "Memorandum in Opposition to Respondent's Motion for Summary Judgment" (Document No. 97). The undersigned will address Respondent's "Motion for Summary Judgment" by separate a PF&R.

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To trigger the above AEDPA deference, a State Court's decisions must be "adjudicated on the

merits." <u>Gordon v. Braxton</u>, 780 F.3d 196, 202 (4th Cir. 2015)(If the State court's decision does not qualify as an "adjudication on the merits," AEDPA deference is not triggered and the Court must review the issue *de novo*.). A claim is "adjudicated on the merits" if the claim "is exhausted in state court and not procedurally defaulted." <u>Gray v. Zook</u>, 806 F.3d 783, 798 (4th Cir. 2015)(citation omitted); <u>also see</u> <u>Thomas v. Davis</u>, 192 F.3d 445, 455 (4th Cir. 1999)(explaining that a claim has been adjudicated upon the merits where the claim was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree"); <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, <u>United States v. Barnett</u>, 644 F.3d 192 (4th Cir. 2011)(Exhaustion requires that a claim be "fairly presented," such that the claim was presented face-up and squarely, providing an opportunity for review by the highest state court.) It is a case-specific inquiry as to whether a claim has been "adjudicated on the merits," but a "claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record.'" <u>Braxton</u>, 780 F.3d at 202 (citing <u>Winston v. Kelly (Winston I)</u>, 592 F.3d 535, 544 (4th Cir. 2010)(The record may be materially incomplete if a state court "unreasonably refuses to permit further development of the facts.") The Fourth Circuit has explained that where a state court "unreasonably refuses to permit further develop of the facts," it passes up the opportunity that exhaustion ensures. <u>Winston v. Pearson (Winston II)</u>, 683 F.3d 489, 496 (4th Cir. 2012)(exhaustion requires that a state court have an opportunity to apply the law and consider all relevant evidence to petitioner's claim). Additionally, the "adjudication on the merits" requirement does not exclude "claims that were decided in state court, albeit in a summary fashion." <u>Thomas v. Taylor</u>, 170 F.3d 466, 475 (4th Cir. 1999); <u>also see</u> <u>Winton II</u>, 683 F.3d at 502(discussing <u>Harrington v. Richter</u>, 562 U.S 86, 131

S.Ct. 770, 178 L.Ed.2d 624 (2011)(noting that although a state court's summary denial may be presumed an "adjudication on the merits," a federal court may still find that the state court did not adjudicate a claim on the merits if the thoroughness of the state court's development of the record is challenged and there was a materially incomplete record before the state court.) When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). The Court, however, must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158; also see Harrington, 562 U.S at 98 – 99, 131 S.Ct. at 770("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.").

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but

29

unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."); also see Woods v. Donald, 575 U.S. ___, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(per curiam)(For a state court's decision to be an unreasonable application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") Thus, a litigant must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S at 103, 131 S.Ct. at 770. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[11] On this framework, consideration should be

---

[11] Title 28, U.S.C. Section 2254(e) provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –

given to the Motions for Summary Judgment.

**Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support non-moving party's claims, summary judgment is

---

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

appropriate.

## ANALYSIS

In his Motion, Petitioner argues that he is entitled to summary judgment on his claim that appellate delay resulted in a violation of his right to due process. (Document No. 85.) Citing United States v. Johnson, 732 F.2d 379 (4th Cir. 1984), Petitioner argues that inordinate delay in an appeal may result in a due process violation. (Id., p. 10.) Petitioner notes that in determining whether appellate delay violates a defendant's right to due process, Courts apply the speedy-trial analysis set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Applying the four-factor Barker analysis, Petitioner argues that each factor weighs in his favor. (Id., pp. 10 – 17.) Thus, Petitioner argues that this Court should find that the appellate delay resulted in a due process violation. (Id.) As relief, Petitioner asserts that he is entitled to the following: (1) To have each of his *habeas corpus* claims reviewed on the merits; (2) To the issuance of an unconditional writ; and (3) To have the State enjoined from re-prosecution of Petitioner. (Id., pp. 17 - 22.)

In his "Response in Opposition to Petitioner's Motion for Partial Summary Judgment," Respondent references and incorporates his "Memorandum of Law in Support of his Motion for Summary Judgment" (Document No. 91, pp. 10 – 15). (Document No. 92.) In his "Memorandum of Law in Support of his Motion for Summary Judgment," Respondent argues that "[t]he nineteen (19) year delay in Petitioner's direct appeal is not attributable to the State of West Virginia, and Petitioner did not suffer unconstitutional prejudice as a result of the delay." (Document No. 91, pp. 10 – 15.) Respondent notes that the WVSCA concluded that the delay in

Petitioner's appeal was insufficient to nullify his sentence under Article III, Sections 10 and 17 of the West Virginia Constitution. (Id., pp. 12 – 13.) Respondent argues that Petitioner's appellate delay claim should be denied because the WVSCA's "factual findings and conclusions of law are neither contrary to federal law nor an unreasonable determination of the facts." (Id., pp. 12 – 13.) In the alternative, Respondent argues that even if the Court considers the issue de novo and applies the Barker factors, Petitioner's appellate delay claim still fails. (Id., pp. 13 – 15.) Therefore, Respondent concludes that the Court should deny Petitioner's request for summary judgment, and grant Respondent's request for summary judgment, on the above issue. (Id.)

In Reply, Petitioner argues that his appellate delay claim is subject to de novo review. (Document No. 96, pp. 2 – 6.) Petitioner contends that the AEDPA's deferential standard of review does not apply because the WVSCA's decision "came much too late to constitute meaningful review." (Id., p. 2.) Next, Petitioner argues that "[e]ven if the Court were inclined to overlook the 20-year delay in Petitioner's appeal and give deference to the WVSCA's belated affirmance of Petitioner's conviction, it would quickly discern that said affirmance was based "on an unreasonable determination of the facts" and therefore not entitled to any deference under the AEDPA." (Id., p. 3.) Petitioner complains that the WVSCA did not conduct an evidentiary hearing and "the record before the WVSCA did not contain court records or other document sufficient to compensate for the absence of an evidentiary hearing." (Id., pp. 3 – 4.). Although Petitioner acknowledges that the appeal appendix contained attorney-client correspondence between Petitioner and Steven Bragg (appointed in 2008), Nicholas May (appointed in 2013), and Jason Goad (appointed in 2013), it did not contain any correspondences between Petitioner and attorneys Nancy Sheets and Neil Bouchillon (appointed from 1994 to 2008). (Id., p. 4.)

33

Petitioner states that the "appendix record does not contain documents of any kind to explain, or even address, the first fourteen (14) years of delay in Petitioner's appeal. (Id.) Petitioner asserts that he notified the WVSCA that the record was incomplete and requested that the WVSCA obtain and review relevant documents. (Id., pp. 4 – 5.) Petitioner, however, states that the WVSCA refused his request. (Id., p. 5.) Thus, Petitioner concludes that the WVSCA's findings were based upon a materially incomplete record. (Id.) Petitioner further contends that the WVSCA's findings were not supported by the limited record before the Court. (Id., pp. 5 – 6.) Petitioner asserts that the WVSCA's dispositive finding on the appellate-delay issue was not supported by the limited record before the Court. (Id., pp. 5 – 6.) Petitioner, therefore, concludes that the Court should consider the issue de novo and apply the four-part Barker analysis in assessing Petitioner's claim. (Id., p. 6.) Petitioner continues to argue that each Barker factor weighs in his favor and this Court should conclude that Petitioner's due process rights were violated as a result of the appellate delay. (Id., pp. 6 – 10.) As relief, Petitioner again argues that he is entitled to an unconditional writ releasing Petitioner from custody and enjoining the State from re-prosecution.[12] (Id., pp. 11 – 12.)

---

[12] In *Turner v. Bagley*, the Sixth Circuit unconditionally granted petitioner's request for *habeas* relief "[b]ecause the ineffective assistance rendered by Turner's attorneys in state court deprived him of an opportunity to pursue a meaning direct appeal from his conviction." *Turner*, 401 F.3d at 727. Circuit Judge Guy, however, dissented from the decision granting Turner an unconditional writ after noting that "it is not clear whether a due process right to 'speedy appeal' may be the basis for habeas relief (since it has not been recognized by the Supreme Court), or whether Turner can demonstrate actual prejudice to the appeal arising from delay." *Id.* In *Hannon v. Maschner*, the Tenth Circuit explained that the unconditional writ was appropriate because Hannon had not "simply experienced delay in a state appeal," but had "lost the opportunity to file a direct appeal" due to ineffective assistance of counsel. *Hannon v. Maschner*, 981 F.2d 1142, 1145 (10th Cir. 1992). Other circuits, however, have recognized that an unconditional writ is not an appropriate remedy for unless petitioner can show that appellate delay caused substantial prejudice to disposition of the appeal. *Cody v. Henderson*, 936 F.2d 715, 719 (2nd Cir. 1991);

34

A.    Deference Pursuant to Section 2254(d):

First, the undersigned will address Petitioner's claim that this Court should not give

deference to the WVSCA's decision because the decision "came much too late to continue

meaningful review." Citing <u>Turner v. Bagley</u>, 401 F.3d 718 (6th Cir. 2005) and <u>Ward v. Freeman</u>,

46 F.3d 1129 (4th Cir. 1995), Petitioner argues that the Court should not give deference to the

WVSCA's decision because such "came much too late to constitute meaningful review."

---

*Coe v. Thurman*, 922 F.2d 528, 532 (9th Cir. 1990). To show substantial prejudice, a petitioner must demonstrate a reasonable probability that, but for the delay, the result of the appeal would have been different. *Mathis v. Hood*, 937 F.2d 790, 794 (2nd Cir. 1991). In the instant case, Petitioner did not lose the opportunity for his direct appeal. Petitioner's appeal was perfected and the WVSCA affirmed his conviction. Further, Petitioner does not allege that the appellate delay impaired his ability to present a claim, such that the result of the appeal would have been different. *See Johnson*, 732 F.2d at 383(finding that where the "appeal has been heard and founding lacking in merit there is not any sound reason to order defendant's release"); *Brown v. Costello*, 2004 WL 1837356 (S.D.N.Y. Aug 17, 2004)(Although defendant suffered a violation of his due process rights, Petitioner is not entitled to unconditional release.) Petitioner merely states that the appellate delay caused him unnecessary "anxiety and concern" resulting in prejudice to his health and well-being. *See Betterman*, ___ U.S. at ___, 136 S.Ct. at 1615(noting that a *pre-convicted* defendant is protected by the Speedy Trail Clause, which implements the presumption of innocence by "minimiz[ing] anxiety and concern accompanying public accusation"); *United States v. DeLeon*, 444 F.3d 41, 59 (1st Cir. 2006)("[W]hile any defendant who has been convicted of a crime may experience anxiety during the pendency of the appeal, this consideration is not useful to evaluating prejudice for due process purposes.") Citing *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), Petitioner further argues that the prejudice should be presumed when there is "extreme delay." The *Doggett* case, however, involved a violation of defendant's Sixth Amendment right to a speedy trial. *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)(finding that a 8 ½ year delay between a defendant's indictment and arrest violated his Sixth Amendment right to a speedy trial). In *Betterman*, the Supreme Court recognized that remedying post-conviction delay by vacating a validly obtained conviction would result in "an unjustified windfall." *Betterman*, ___ U.S. at ___, 136 S.Ct. at 1615("The sole remedy for a violation of the speedy trial right – dismissal of the charges – fits the preconviction focus of the [Speedy Trial] Clause, for it would be an unjustified windfall to remedy sentencing delay by vacating validly obtained convictions."). Even assuming Petitioner had a due process right to a speedy appeal and such was violated, Petitioner has failed to demonstrate that he is entitled to an unconditional release and enjoinment of re-prosecution.

(Document No. 96, pp. 2 – 3.) In <u>Turner</u>, the Sixth Circuit considered whether delay in the adjudication of petitioner's appeal rendered the state process ineffective or inadequate to protect petitioner's federal constitutional rights such that the exhaustion requirement should be excused. <u>Id.</u> at 724. The Sixth Circuit determined that where there is inordinate delay in state court, the exhaustion requirement should be excused and the petitioner's *habeas* petition should be considered on the merits. <u>Id.</u> at 725-27. The Sixth Circuit further determined that a decision by the state court affirming petitioner's conviction does not render his *habeas* claim[13] moot because the merits of his *habeas* petition had not been addressed. <u>Id.</u> at 726.

In <u>Ward v. Freeman</u>, 46 F.3d 1129 (4th Cir. 1995), the Fourth Circuit held that "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." <u>Id.</u> The Fourth Circuit explained that the remedy was for the district court to excuse the exhaustion requirement and consider petitioner's *habeas* claims on the merits. <u>Id.</u> The Fourth Circuit further stated that petitioner's "federal petition [was] not rendered moot by the grant of a belated appeal to the North Carolina Court of Appeals." <u>Id.</u> The Fourth Circuit reasoned that although petitioner had been granted belated appellate review, requiring petitioner to exhaust his state remedies after such inordinate delay would result in further prejudicial delay. <u>Id.</u> Neither the <u>Turner</u> nor the <u>Ward</u> Court held that the district court should not give deference pursuant to 2254(d) to the state court's decision affirming petitioner's conviction. Instead, the <u>Turner</u> and <u>Ward</u> Courts held that exhaustion should be excused, and petitioner's claims considered on the merits, where there had

---

[13] Noting that Petitioner's *habeas* claim concerning whether delay or ineffective assistance of counsel violated the petitioner's right to an adequate and effective appeal had not been addressed. *Turner*, 401 F.3d at 726. The undersigned notes that *Turner* cites in support *Burkett v. Cunningham*, 826 F.2d 120 (3rd Cir. 1987), which has been abrogated by the Supreme Court in *Betterman v. Montana*, __ U.S. __, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016).

been no decision by the state court due to inordinate delay. The undersigned, therefore, rejects Petitioner's above argument.[14]

Next, the undersigned will consider Petitioner's claim that the Court should not give deference to the WVSCA's decision on his appellate delay claim because the claim was not "adjudicated upon the merits." Specifically, Petitioner argues that his appellate delay claim was not "adjudicated on the merits" because the WVSCA's decision was based upon "a materially incomplete record." As stated above, it is a case-specific inquiry as to whether a claim has been "adjudicated on the merits." Winston II, 682 F.3d at 496. Clearly, a "claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record.'" Braxton, 780 F.3d at 202. The record may be materially incomplete if a state court "unreasonably refuses to permit further development of the facts." Winston I, 592 F.3d at 544(explaining that the state court had not adjudicate the relevant claim at issue on the merits because the state court ignored "new, material evidence that the state court could have considered had it permitted further development of the facts."). In the instant case, Petitioner complains that the record was "materially incomplete" because it did not contain any correspondences between Petitioner and Attorneys Sheets and Bouchillon. Petitioner explains that 14 years of his appellate delay occurred during the appointment of Attorneys Sheets and Bouchillion and the "appendix record does not contain documents of any kind to explain, or even address, the first fourteen (14) years of delay

---

[14] In denying Respondent's Motion to Dismiss for failure to exhaust, the District Court noted that Respondent concedes that "the Supreme Court's decision rendered Petitioner's first five claims now before the Court exhausted." (Document No. 74, p. 4.) The District Court then determined that Petitioner was excused from exhausting his remaining claim of ineffective assistance of counsel due to the inordinate delay of the state *habeas* process. (*Id.*, p. 26.)

in Petitioner's appeal."[15] Although the WVSCA may have precluded some factual development,[16] the undersigned cannot find that the WVSCA acted unreasonably in refusing to permit further factual development. A review of the WVSCA's decision reveals that the Court was well aware of Petitioner's argument that it had taken more than 20 years to perfect his appeal despite Petitioner's constant and repeated attempts. (Document No. 88-13, pp. 5 - 6.) The WVSCA was further aware of Petitioner's claim that the State, the Circuit Court, and appointed counsel had caused the unreasonable delay. (Id.) The WVSCA specifically noted that Petitioner had filed with it a motion for extension of time to file a notice of appeal and a petition for writ of mandamus requesting that the Circuit Court be compelled to rule upon Petitioner's motion for resentencing. (Id., p. 6, fn. 10.) Further, Petitioner acknowledges that in filing his *pro se* Reply

---

[15] Petitioner acknowledges that the appeal appendix contained attorney-client correspondence between Petitioner and Attorney Bragg (appointed in 2008), Attorney May (appointed in 2013), and Attorney Goad (appointed in 2013).

[16] Although Petitioner states that WVSCA refused his request to obtain and review certain documents, Petitioner fails to offer any evidence confirming that WVSCA failed to obtain or review such documents. Petitioner acknowledges that all of the documents "were filed in the Circuit Court and/or the Supreme Court of Appeals." (Document No. 84-2, p. 17.) The documents Petitioner requested the WVSCA to obtain and review included the following: (1) Petitioner's Motion to Prepare Transcript and Notice of Intent to Appeal as filed on March 9, 1994; (2) Petitioner's Motion to Dismiss Counsel, Motion to Extend Appeal Period, and Motion to Amend Dismissal Order as filed on June 15, 1994; (3) A copy of the Circuit Court's Order relieving counsel as filed on December 9, 1994; (4) A copy of a letter to Attorney Bouchillon as filed on December 20, 1994; (5) A copy of the Circuit Court's Order staying transfer as filed on January 11, 1995; (6) A copy of the Circuit Court's Order lifting the stay of transfer as filed on April 13, 1995; (7) A copy of the Circuit Court's Resentencing Order as filed on July 27, 1995; (8) A copy of Petitioner's Motion to Disqualify Court with Exhibits, Motion to Disqualify Prosecuting Attorney with Exhibits, and Motion to Dismiss Counsel with Exhibits as filed on February 25, 2008; (9) A copy of the Circuit Court's Order appointing Attorney Bragg as filed on February 26, 2008; (10) A copy of Petitioner's Motion for Resentencing as filed on September 28, 2012; (11) A copy of the Circuit Court's Order appointing Attorney Mayo; and (12) A copy of Petitioner's Motion for Disposition as filed on or about July 12, 2013. (Document No. 88-12, p. 35 and Document No. 84-2, p. 19.)

Brief with the WVSCA, Petitioner notified the WVSCA that appellate counsel Cook had failed to file a Supplemental Appendix as requested by Petitioner. (Document No. 88-12, p. 34.) In his *pro se* Reply Brief, Petitioner stated, in pertinent part, as follows:

> In his letter, Petitioner provided Cook with a summary of West Virginia case law on inordinate appellate delay and with a list of documents from his court file that were "relevant to one or more of the *Rhodes* factors." The list provided the name, filing date and docket-sheet page number for documents relevant to: (1) the "clarity and diligence" with which Petitioner has asserted his right to appeal; (2) the length of time served by the Petitioner; (3) previous writs and re-sentencing orders; and (4) any "malice or ill will" on the part of the State.
>
> For reasons unknown, Cook failed to incorporate any of the listed documents in the Appendix Record he filed on behalf of the Petitioner. However, during a subsequent phone conference, Cook indicated that a Supplement Appendix could be filed without opposition from the Respondent. The Petitioner therefore provided Cook with another list of court documents. These documents established that the Petitioner had complained to the lower court about the "inaction" of his court-appointed attorneys. For reasons unknown, Cook did not seek leave to file a Supplemental Appendix.
>
>             \* \* \*
>
> The documents listed by the Petitioner in his letters to Cook are in the record, according to the Docket Sheets (See A.R. at 115-120). The Petitioner asserts, moreover, that these documents establish: (1) he has asserted his right to appeal with clarify and diligence; (2) he has served more than 22 years on his sentence; (3) he has complained about the inaction of each dilatory attorney appointed to him; and (4) there is some showing of malice and ill will on the part of the State in this case. The documents establish, in sum, the State's extraordinary dereliction in affording the Petitioner a timely appeal. Therefore, in the interest of justice and in the interest of avoid any further delay, the Petitioner request that the Court itself obtain the documents and review them.

(Id., pp. 34 – 35.) As a Supplemental Appendix, Petitioner filed with the WVSCA the following documents: (1) Petitioner's correspondence to Attorney Cook dated August 13, 2014, wherein Petitioner stated that he wished to assert his appellate delay claim in his direct appeal and setting forth, in great detail, facts supporting his appellate delay claim (Document No. 84-2, pp. 5 – 13.); (2) Petitioner's correspondence to Attorney Cook dated January 5, 2015, wherein Petitioner

stated his desire for the Appendix Record be supplemented with specific documents (Id., pp. 14 – 17.); (3) Petitioner's correspondence to the Clerk of the Circuit Court dated March 3, 2015, wherein Petitioner requested copies of specific document from the Court file with reference to the filing dates and document numbers (Id., pp. 18 – 19.); and (4) Petitioner's correspondence to the Clerk of the Circuit Court dated March 23, 2015, complaining that he had not received a copy of his requested documents (Id., p. 20.). The documents contained in Petitioner's Supplemental Appendix clearly set forth Petitioner's efforts to pursue his direct appeal during the appointment of Attorneys Sheets and Bouchillion (first 14 years of delay). (Id., pp. 9 – 13, 16 – 17, 19.) Thus, the facts concerning the first 14 years of delay were before the WVSCA and the undersigned cannot find that the WVSCA acted unreasonably in refusing to permit further factual development. See Morva v. Zook, 821 F.3d 517, 527 (4th Cir. 2016)(finding that even though the state court precluded some factual development as to petitioner's claim, the state court did not act unreasonably because the record was substantial and contained sufficient evidence for the court to decide the claim.) Based upon the foregoing, the undersigned finds that Petitioner's appellate delay claim was "adjudicated upon the merits." Petitioner's challenge to the WVSCA's findings are more properly asserted under Section 2254(d) as Petitioner appears to be claiming that WVSCA's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[17] The undersigned, therefore, will review

---

[17] Specifically, Petitioner challenges the WVSCA's finding that (1) the 20-year delay was caused by the withdraw of court appointed attorneys, and (2) the withdraw of those attorneys was caused by Petitioner's "accusatory, abrasive and belligerent attitude, which is ever present in the caustic letters [he] wrote to [his] attorneys." To the extent Petitioner may be claiming that the WVSCA misapplied State law, his claim should be dismissed. Relief under Section 2254 is available to State prisoners in "custody in violation of the Constitution or laws or treaties of the United States." Violations of State law and procedure that do not implicate specific federal constitutional

Petitioner's appellate delay claim under AEDPA's deferential standard.

### B.     Claim of Appellate Delay:

Regarding Petitioner's appellate delay claim, the WVSCA considered and denied his claim in Petitioner's direct appeal. In the direct appeal, the WVSCA addressed the claim as follows:

> In his first assignment of error, petitioner argues that the extraordinary delay in his right to appeal is cause for his immediate release from prison, along with an injunction to spare him from further prosecution. It is undisputed that petitioner was convicted of the charge of second-degree sexual assault on August 19, 1993, and was sentenced on February 14, 1994, to a term of life imprisonment. However, the appeal of his conviction was not filed until January 8, 2014.
>
> In *Rhodes v. Leverette*, 160 W.Va. 781, 786, 239 S.Ed.2d 136, 140 (1977), we recognized the right to appeal a criminal conviction, and ruled the denial of the right to appeal constitutes a violation of due process which renders the sentence imposed by reasons of the conviction void and unenforceable. We further held, in *Carter v. Bordenkircher*, 159 W.Va. 717, 226 S.E.2d 711 (1976), that, except in cases of extraordinary dereliction on the part of the State, the appropriate remedy for denial of a timely appeal was not unconditional release, but such remedial steps as will permit the effective prosecution of the appeal.
>
> In syllabus point six of *Leverette*, we identified the factors to be considered in determining whether there has been extraordinary dereliction, which include:
>
>> The clarity and diligence with which the relator has moved to assert his right of appeal; the length of time that has been served on the underlying sentence measured against the time remaining to be served; whether prior writs have been filed or granted involving the right to appeal; and the related question of whether resentencing has occurred in order to extend the appeal period. While extraordinary dereliction on the part of the State does not require a showing of malice or ill will, certainly if such is shown it would be a significant factor.

---

provisions are not cognizable in *habeas* review. *See Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions. In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Fisher v. Angelone*, 163 F.3d 835, 854 (4th Cir. 1998).

In applying the above factors to the facts in the case now before us, we conclude that the State has not been so extraordinarily derelict as to justify the setting aside of petitioner's conviction. Petitioner argues that, through no fault of his own, his appeal has taken more than twenty years to perfect. He contends that he has made constant, repeated attempts at appeal but he has been denied his right to appeal for no justifiable reason. Petitioner believes he should be commended for what he has effectively done to preserve and protect his appellate rights over the years without the assistant of the State, the court system, or his appointed counsel. He has filed, pro se, a petition for mandamus relief requesting this Court to direct the appointment of counsel. Petitioner argues that he has steadfastly moved to protect his appellate rights, and has already served more time than he would have served on the underlying sentence (absent the life sentence recidivist enhancement, which was wrongfully applied).

The State argues that the delay in petitioner's appeal does not warrant his immediate release from prison, and disputes petitioner's assertion that none of the twenty year delay of his appeal is attributable to him, or that he did not receive assistance from the State, the court system or his numerous appointed counsel (including George Beter, Nancy Sheets, Harry Hager, Neil Bouchillon, Steve Bragg, Nicholas Mayo, Jason Goad, and Steve Cook). Each of these attorneys, upon their own initiative, or at the insistence of petitioner, withdrew as petitioner's appellate counsel. In the State's view, the withdrawal of these attorneys was due, in large part, to petitioner's accusatory, abrasive, and belligerent attitude, which is ever present in the caustic letters that petitioner wrote to these attorneys. Petitioner has found a problem with every attorney that the court has appointed for him, be it appellate or trial counsel. We agree. While a nearly twenty-year delay of the filing of petitioner's appeal is extraordinarily long, such delay does not automatically entitle petitioner to unconditional release from prison. In syllabus point four of *State v. Merritt*, 183 W.Va. 601, 396 S.E.2d 871 (1990), we reasoned that

> [o]nce a criminal defendant's appeal has been heard and found lacking in merit, notwithstanding possible due process violations arising from delays in transcribing the trial transcript or counsel's dilatory action in perfecting the appeal, the defendant is not entitled to unconditional release.

In the case at hand, there is no merit to petitioner's appeal. As such, per *Merritt*, there is no prejudice to petitioner for delay in the filing of his appeal.

(Id., pp. 5 – 7.)

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend.

42

VI. It is well established that a speedy trial is a fundamental right guaranteed to a criminal defendant by the Sixth Amendment and imposed on the States through the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court held that "[w]here a state guarantees that right to a direct appeal, . . . the state is required to make that appeal satisfy the Due Process Clause." Evitts v. Lucey, 469 U.S. 387, 405, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)(Due process guarantees an appeal that is both "adequate and effective."). In Johnson, the Fourth Circuit determined that "undue delay in processing an appeal *may* raise to the level of a due process violation." United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984), cert. denied, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984)(emphasis in original). To determine whether a delay amounts to a due process violation, the Fourth Circuit adopted the four-factor speedy trial analysis as announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Id. The four-factors are as follows: (1) the length of delay; (2) the reason for the delay, (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. No one factor is dispositive; all factors are to be considered together in light of the particular circumstances of the case. Barker, 407 U.S. at 533, 92 S.Ct. at 2194.

As stated above, *habeas* relief under Section 2254(d)(1) shall not be "granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. 2254(d)(1)(emphasis added). The Supreme Court has stated that "'[c]learly established Federal law' . . . includes only 'the holdings, as opposed to the dicta, of this Court's

decisions.'" Howes v. Fields, 565 U.S. ___, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012)(citation omitted). The Supreme Court has further explained that "[i]f this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." Williams v. Taylor, 529 U.S. 362, 381, 120 S.Ct. 1495, 1506-07, 146 L.Ed.2d 389 (2000).

In the instant case, Petitioner relies upon United States v. Johnson, 732 F.2d 379 (4th Cir. 1984),[18] in support of his claim that appellate delay resulted in a violation of the due process rights. Circuit Court precedent, however, does not constitute "clearly established Federal law, as determined by the Supreme Court of the United States" and "cannot form the basis for habeas relief under AEDPA." Parker v. Matthews, ___ U.S. ___, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 (2012). Although the Fourth Circuit, and other circuit courts, have held that appellate delay may constitute a due process violation by extending Barker v. Wingo, that alone is insufficient.[19] The United States Supreme Court's decision in Barker does not squarely address a criminal defendant's right to a speedy appeal. In Barker, the United States Supreme Court established a four-part test for determining whether a criminal defendant's right to a speedy trial under the Sixth Amendment had been violated. Barker, 407 U.S. at 530-33, 92 S.Ct. at 2192-93. The interests that underlie the right to a speedy trial are clearly not the same as the interest of having a conviction reviewed on appeal. See Betterman v. Montana, ___ U.S. ___, 136 S.Ct. 1609, 1611, 194 L.Ed.2d 723 (2016)("Before conviction, the accused is shielded by the presumption of

---

[18] It should be noted that the Fourth Circuit emphasized that "undue delay in processing an appeal *may* raise to the level of a due process violation."

[19] In *Johnson*, the Fourth Circuit determined that appellate delay "may" constitute a due process violation. Importantly, it should be noted that the *Johnson* case involved a direct appeal from a

44

innocence, which the Speedy Trial Clause implements by minimizing the likelihood of lengthy incarceration before trial, lessening the anxiety and concern associated with public accusation, and limiting the effects of long delay on the accused's ability to mount a defense."); United States v. DeLeon, 444 F.3d 41, 58 (1st Cir. 2006)(noting that a convicted defendant no longer enjoys a presumption of innocence and his "incarceration pending appeal cannot itself be said to be 'oppressive.'") It is well established a criminal defendant's Sixth Amendment right to a speedy trial ends at the time of conviction. Betterman, ___ U.S. at ___, 136 S.Ct. at 1612 ("The Sixth Amendment's speedy trial guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges.") In Betterman, the Supreme Court determined that the alleged 14-month delay between defendant's conviction and sentencing did not result in a violation of his Sixth Amendment right to a speedy trial. Id. The Supreme Court went on to note that Betterman did not assert a due process claim, and "we express no opinion on how he might fare under that more pliable standard." Id., ___ U.S. at ___, 136 S.Ct. at 1618. In their concurring opinion, Justice Thomas and Justice Alito clarified that "[w]e have *never* decided whether the Due Process Clause creates an entitlement to a reasonably prompt sentencing hearing [and] [t]oday's opinion leaves us free to decide the proper analytical framework to analyze such claims if and when the issue is properly before us." Id.(emphasis added) Justices Thomas and Alito further stated as follows:

> Justice Sotomayor suggests that, for such claims, we should adopt the factors announced in *Barker v. Wingo*, 407 U.S. 514, 530-533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Post*, at 1619 (concurring opinion). I would not prejudge that matter. The factors listed in *Barker* may not necessarily translate to the delayed

federal conviction and not a *habeas* claim brought pursuant to Section 2254.

sentencing context. The Due Process Clause can be satisfied where the State has adequate procedures to redress an improper deprivation of liberty or property. *See Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In unusual cases where trial courts fail to sentence a defendant within a reasonable time, a State might fully satisfy due process by making traditional extraordinary legal remedies, such as mandamus, available. Or, much like the federal Speedy Trial Act regulates trials, *see* 18 U.S.C. § 3161, a State might remedy improper sentencing delay by statute. And a person who sleeps on these remedies, as Betterman did, may simply have no right to complain that his sentencing was delayed. We should await a proper presentation, full briefing, and argument before taking a position on this issue. The Court thus correctly "express[es]] no opinion on how [Betterman] might fare" under the Due Process Clause.

Id., ___ U.S. at ___, 136 S.Ct. at 1618-19; Ross v. Moffitt, 417 U.S. 600, 610, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)(noting that in the context of due process, "there are significant differences between the trial and appellate stages of a criminal proceeding"). Thus, the undersigned finds that the Fourth Circuit Court's extension of Barker to a new setting cannot be the basis of *habeas corpus* relief after AEDPA. See Hayes v. Ayers, 632 F.3d 500, 523 (9th Cir. 2011)("Lower courts' extension of *Barker* to a new setting, however, cannot be the basis of habeas corpus relief after AEDPA."); Reed v. Quarterman, 504 F.3d 465, 486 (5th Cir. 2007)(lower courts extension of *Evitts* and *Barker* to appellate delay claims is insufficient under AEDPA); Ervin v. Davis, 2016 WL 3648717, * 10 (N.D.Cal. July 8, 2016)(noting that although the Supreme Court adopted a balancing test for resolving claims of delay in violation of a defendant's Sixth Amendment right to a speedy trial in *Barker*, the Supreme Court has not extended this balancing test to delay on appeal); Brightley v. Heath, 2016 WL 1060326, * 6 (S.D.N.Y. March 15, 2016)(finding petitioner was not entitled to *habeas* relief even though the Second Circuit has held that criminal defendants have a right to a timely appeal because "the Supreme Court has not yet directly addressed the issue of whether the Constitution guarantees a speedy criminal

appeal."); Chapman v. McQuiggin, 2013 WL 640999, * 6 (E.D. Mich. Dec. 9, 2013)(recognizing that although the Sixth Circuit had extended *Barker* to appellate delay claims, Sixth Circuit precedent could not constitute "clearly established Federal law" for purposes of *habeas* relief); Brown v. Crim, 2013 WL 5530631, * 9 (D.Or. Sept. 25, 2013)("While the Ninth Circuit and other courts have based their decisions on *Barker v. Wingo*, 407 U.S. 514 (1972), that alone does not make the rule relevant to habeas corpus proceedings under the AEDPA."); King v. DeMorales, 2010 WL 4916624, * 14 (C.D.Cal. May 3, 2010)(finding that pre-AEDPA decisions by Circuit Courts that relied "on the general principle enunciated by the Supreme Court in *Evitts* – that where a state grants criminal defendants the right to challenge their convictions on appeal, its procedures must comply with due process – that principle is far too general to support a conclusion that a state court's denial of an appellate delay claim could constitute an unreasonable application of Supreme Court precedent."); but see United States v. $8,850, 461 U.S. 55, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983)(applying the *Barker* test to petitioner's claim that the length of time between the seizure of his property, and the initiation of the forfeiture trial, resulted in a violation of his Fifth Amendment right against deprivation of property without due process of law). Since the United States Supreme Court has not yet recognized a right to a speedy appeal in a criminal case, Petitioner is not entitled to *habeas* relief on the above issue.[20] See Owens v. McLaughlin, 733 F.3d 320, 329 (11th Cir. 2013)(finding that the State court's decision that petitioner's due process rights were not violated by a 25 year delay was not contrary to, or an unreasonable application of "clearly established federal law" because "[t]he Supreme Court has

---

[20] The undersigned notes that if there was United States Supreme Court precedent recognizing a right to a speedy appeal and determining *Barker* to be the appropriate test, Petitioner may be correct that the *Barker* factors weigh in his favor.

never held that there is a constitutional right to a speedy direct appeal in a state criminal case."); Blair v. Martel, 645 F.3d 1151, 1158 (9th Cir. 2011)(denying *habeas* relief for a 16-year delay between a capital sentence and a decision on direct appeal because there is no clearly established due process right to a speedy appeal); Reed v. Quarterman, 504 F.3d 465 (5th Cir. 2007)(finding no United States Supreme Court decision holding appellate delay to be a constitutional violation); Simmons v. Beyer, 44 F.3d 1160, 1169 (3rd Cir. 1995)("[T]he Supreme Court has not explicitly recognized a criminal defendant's right to a speedy appeal."); Cody v. Henderson, 936 F.2d 715, 718 (2nd Cir. 1991)("The Supreme Court has not yet directly addressed the issue of whether the Constitution guarantees a speedy criminal appeal."); Walker v. Thompson, 2016 WL 8678446 (M.D.Ga. April 1, 2016)("The United States Supreme Court . . . has yet to hold that appellate delay creates an independent due process claim."); Brightley v. Heath, 2015 WL 10487766 (S.D.N.Y. Jan. 6, 2015)(There is no clearly established Supreme Court law that ensures criminal defendants a speedy appeal); Chapman, 2013 WL 6409999 at * 6("In the absence of any clearly established law from the Supreme Court that a defendant has a right to a speedy appeal in a criminal case, petitioner would not be entitled to habeas relief on his claim that he was denied the right to a speedy appeal."); Brown, 2013 WL 5530631 at * 9 (There is "no 'clearly established Federal law, as determined by the Supreme Court of the United States' recognizing a due process right to speedy appeal."); King, 2010 WL 4916624 at * 14("[T]here is no Supreme Court case holding that excessive appellate delay violates the Constitution."). Thus, the undersigned respectfully recommends that Petitioner's appellate delay claim be denied.

Based upon the foregoing, the undersigned respectfully recommends that Petitioner's

"Motion for Partial Summary Judgment" (Document No. 84) be denied and the matter referred

back to the undersigned for further proceedings.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court

confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY**

Petitioner's "Motion for Partial Summary Judgment" (Document No. 84), and remand the case

back to the undersigned from further proceedings.

The parties are hereby notified that this "Proposed Findings and Recommendation" is

hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge

Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have

fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of

filing of this Proposed Findings and Recommendation within which to file with the Clerk of this

Court specific written objections identifying the portions of the Findings and Recommendation to

which objection is made and the basis of such objection. Extension of this time period may be

granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155,

106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985);

United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct.

2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties,

Chief Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Petitioner and counsel of record.

Dated: July 20, 2018.

Omar J. Aboulhosn
United States Magistrate Judge