# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

CHARLES F. PLYMAIL,

        Petitioner,

v.                               CIVIL ACTION NO.   3:14-6201

PATRICK A. MIRANDY,
Warden, St. Mary's Correctional Center,

        Respondent.

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Petitioner's Motion for Partial Summary Judgment on his federal habeas claim that a lengthy delay in his state appeal violated the Due Process Clause, and Respondent's Motion for Summary Judgment as to all of Petitioner's federal habeas claims. *Pl.'s Mot. for Summ. J.*, ECF No. 84; *Pl.'s Mem. of Law in Supp. of Mot. for Summ. J.*, ECF No. 85, at 1; *Def.'s Mot. for Summ. J.*, ECF No. 89. Pursuant to an Order issued on December 19, 2016, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for proposed findings of fact and recommendation for disposition. ECF No. 54. The Magistrate Judge submitted proposed findings and recommended that this Court deny Petitioner's Motion for Partial Summary Judgment and grant Respondent's Motion for Summary Judgment. *Proposed Findings and Recommendation*, ECF Nos. 98, 112. Petitioner now objects to both proposed findings and recommendations. *Objections to Proposed Findings and Recommendations*, ECF Nos. 102, 119 [hereinafter *Objections*]. For the reasons below, the Court adopts both proposed findings and recommendations of Magistrate Judge Aboulhosn, denies Petitioner's Motion for Partial Summary

Judgment, grants Respondent's Motion for Summary Judgment, and dismisses this matter from the Court's docket.

## I.  Background

The factual and procedural background of this case is lengthy and complex. Thus, while the Court will not detail the complete factual development that led to the motions currently before it in this order,[1] the Court will provide a brief summary of the procedural history.

### A. Criminal Case and Appeal

On January 7, 1993, the Grand Jury of Cabell County, West Virginia, returned an indictment against Petitioner, charging him with one count of second-degree sexual assault, one count of burglary, two counts of first-degree sexual assault, one count of first-degree sexual abuse, and one count of malicious wounding. *See* ECF No. 88-1, at 2–3. Following a two-day jury trial which began on August 18, 1993, Petitioner was convicted of second-degree sexual assault. *See* ECF No. 88-5, at 2–3. As a result of his criminal background, the Circuit Court sentenced Petitioner to life in prison, with parole eligibility after serving 15 years. *See* ECF No. 88-9, at 2–3.

After being sentenced, Petitioner began the process of appeal with numerous court-appointed attorneys:

On March 9, 1994, Petitioner filed a Notice of Appeal and the Circuit Court appointed Nancy Sheets as appellate counsel. *See* ECF No. 58-78, at 5. However, on June 15, 1994, Petitioner filed a *pro se* Motion to Dismiss Court-Appointed Counsel and a Motion to Extend the Appeal Period. *See id.*

On December 9, 1994, the Circuit Court relieved Ms. Sheets as counsel, and appointed the

---

[1] For the complete background of this case, review the Proposed Findings and Recommendations of Magistrate Judge Aboulhosn. *See* ECF No. 112, at 1–28.

Public Defender's Office of Cabell County as counsel. *See id.*; ECF No. 70, at 30–31. Assistant Public Defender Neil Bouchillon was then assigned to Petitioner's case, but on June 27, 1995, Mr. Bouchillon filed a Motion to Withdraw as Counsel. *See* ECF No. 58-78, at 6. The Circuit Court conducted a hearing on the Motion to Withdraw on July 21, 1995, and during the hearing Petitioner and Mr. Bouchillon advised the court that they had resolved their differences and Mr. Bouchillon agreed to continue as counsel. *See* ECF No. 65, at 7; ECF No. 84-1, at 3.

Almost thirteen years later, on February 25, 2008, Petitioner filed a Motion to Dismiss the Public Defender's Office. *See* ECF No. 65, at 9, 51–52; ECF No. 58-78, at 6. On February 26, 2008, the Circuit Court appointed Steven Bragg as counsel. *See* ECF No. 58-78, at 6. Then, more than four years later, on January 28, 2013, Mr. Bragg filed a Motion to Substitute Counsel. ECF No. 58-22, at 2.

On March 28, 2013, the Circuit Court granted Mr. Bragg's Motion and appointed Nicolas Mayo as appellate counsel. ECF No. 58-78, at 6. On September 19, 2013, Mr. Mayo filed a proposed resentencing order and a Motion to Withdraw as Counsel. *See id.* The Circuit Court entered the Resentencing Order on September 20, 2013. ECF No. 58-79, at 30–31. By Order entered on September 24, 2013, the Circuit Court granted Mr. Mayo's Motion to Withdraw as Counsel and appointed Jason Goad as counsel. *See* ECF No. 58-78, at 6.

On April 2, 2014, Mr. Goad filed with the West Virginia Supreme Court of Appeals ("WVSCA") a Motion to Withdraw as Counsel. ECF No. 58-45, at 2. By Order entered on April 17, 2014, the WVSCA granted Mr. Goad's Motion and remanded the case to the Circuit Court for the sole purpose of appointing new counsel. *See* ECF No. 58-46, at 2; ECF No. 58-47, at 2. The WVSCA further stayed the appeal pending the appointment of new counsel by the Circuit Court. *See* ECF No. 58-46.

By Order entered on May 29, 2014, the Circuit Court appointed Ray Nolan as appellate counsel. *See* ECF No. 58-49, at 2. However, by Amended Order of Appointment entered on June 3, 2014, the Circuit Court appointed Steve Cook as appellate counsel. *See* ECF No. 58-50, at 2. On November 18, 2014, Mr. Cook filed Petitioner's Appellate Brief. ECF No. 58-60, at 2.

By letter received February 5, 2015, Petitioner provided the WVSCA with a "Waiver of Counsel." ECF No. 58-70, at 2. On February 6, 2015, the State filed its Response Brief. ECF No. 58-67. On February 13, 2015, Mr. Cook filed a Motion to Withdraw as Counsel. ECF No. 58-72, at 2. By Order entered on February 24, 2015, the WVSCA granted Mr. Cook's Motion to Withdraw as Counsel and directed Petitioner to file his Reply Brief by March 30, 2015. ECF No. 58-73, at 2.

On March 30, 2015, Petitioner filed his *pro se* Reply Brief. ECF No. 58-75. By Memorandum Decision filed on November 20, 2015, the WVSCA affirmed Petitioner's conviction and sentence. *See* ECF No. 58-76, at 15.

**B. Federal Habeas Petition**

Petitioner filed the instant Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody on January 31, 2014. ECF No. 1. In his Petition, Petitioner alleges the following grounds for *habeas* relief:

> 1. The State's 19-year delay in affording [Petitioner] an appeal of [his] criminal conviction violates the due process provisions of the Fourteenth Amendment to the United States Constitution.
>
> 2. Because the jurors at [Petitioner's] trial were subjected to judicial coercion, [his] conviction was obtained in violation of the due process provisions of the Fourteenth Amendment of the United States Constitution.
>
> 3. The plainly improper remarks made by the prosecutor during the State's rebuttal and closing were prejudicial enough to have denied [Petitioner] the right to a fair trial and, thus, violated the due process

provision of the Fourteenth Amendment to the United States Constitution.

4. Because [Petitioner's] waiver of the right to testify was based on misleading statements made by the court and counsel, [his] conviction was obtained in violation of the due process provisions of the Fourteenth Amendment to the United States Constitution.

5. Because the trial court lacked jurisdiction to enhance [Petitioner's] sentence under West Virginia's recidivist statute, its imposition of a life sentence violated the due process provisions of the Fourteenth Amendment to the United States Constitution.

6. Because [Petitioner] was not provided with effective assistance of counsel, [his] conviction was obtained in violation of the Sixth Amendment to the United States Constitution.

*Id.* at 10, 18, 20, 22–23.

Petitioner, by counsel, later filed his Motion for Partial Summary Judgment and Memorandum in Support on January 15, 2018. ECF Nos. 84, 85. In support, Petitioner only argues that he is entitled to partial summary judgment on his first claim: that a twenty-year delay in his state appeal violated the Due Process Clause. ECF No. 85, at 1. On March 1, 2018, Respondent filed his own Motion for Summary Judgment, and argues that all of Petitioner's arguments for habeas relief lack merit. *See* ECF No. 89, at 2. The Magistrate Judge issued proposed findings and recommended that this Court deny Petitioner's motion for partial summary judgment and grant Respondent's motion for summary judgment on July 20, 2018, and January 24, 2019, respectively. *See* ECF Nos. 98, 112. Petitioner filed objections to both recommendations on August 28, 2018, and February 22, 2019, respectively. *See Objections*, ECF Nos. 102, 119.

## II.    Standard of Review

### A. Magistrate Judge's Findings

This Court must "make a *de novo* determination of those portions of the ... [Magistrate Judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. §

636(b)(1)(C); *see, e.g.*, *Berry v. Colvin*, No. 14-9859, 2015 WL 1506128, at *1 (S.D. W. Va. Mar. 31, 2015).

**B. Motion for Summary Judgment**

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted). Therefore, summary judgment will not be granted if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

**III.   Discussion**

**A. Petitioner's Partial Motion for Summary Judgment**

The Court will first address Petitioner's objections to the Magistrate Judge's findings and recommendation that this Court should deny Petitioner's motion for partial summary judgment on his claim that his appellate delay violated his due process rights. Petitioner makes the following objections to the Magistrate Judge's proposed findings of fact and recommendation: (1) the Magistrate Judge mischaracterized certain facts, which suggest that Petitioner is to blame for the delay in his post-conviction relief proceedings; (2) the Magistrate Judge incorrectly determined that, despite the extreme delay in Petitioner's state appeal, this Court must give deference to the

WVSCA's opinion affirming Petitioner's conviction; (3) the Magistrate Jude incorrectly determined that the WVSCA's decision on the issue of delay was not based on a materially incomplete record; (4) the Magistrate Judge failed to determine whether the WVSCA's decision on the delay issue was based on an unreasonable determination of the facts presented in the state court proceeding; (5) the Magistrate Judge incorrectly applied the "contrary to … clearly established federal law" provisions of § 2254(d)(1); and (6) the Magistrate Judge incorrectly determined that Petitioner cannot establish prejudice from the twenty-year delay in his appeal. *Objections*, ECF No. 102, at 2. The Court will address each objection in turn.

## 1. Characterization of Facts

First, Petitioner objects to the Magistrate Judge's "mischaracterization of certain facts which suggest that the Petitioner is to blame for the delay in his post-conviction relief proceedings …." *Objections*, ECF No. 102, at 3. Because of conclusions reached later in this opinion that result in a deference to the WVSCA's findings, the facts allegedly mischaracterized are only relevant for resolving the objection discussed in section four of this opinion. Therefore, the Court will unavoidably resolve this objection in section four.

## 2. Deference to West Virginia Supreme Court—Delay Issue

Second, Petitioner objects to the Magistrate Judge's determination that this Court must give deference to the WVSCA's opinion affirming Petitioner's conviction, and argues that the Supreme Court's extreme delay in hearing his appeal must result in no deference. *Objections*, ECF No. 102, at 8. Because there is no legal support for Petitioner's argument, his objection is denied.

Federal habeas relief is available to a state prisoner under 28 U.S.C. § 2254 only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Sargent v. Waters*, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d)

provides that when the issues raised in a § 2254 Petition were already raised and considered on the merits in state court proceedings, federal habeas relief is unavailable *unless* the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Thus, deference must be given to a state court's decision if the state court's decisions is "adjudicated on the merits." *See Gordon v. Braxton*, 780 F.3d 196, 202 (4th Cir. 2015).

Here, Petitioner argues that, even assuming the WVSCA's decision was "adjudicated on the merits," the WVSCA is not entitled to any deference because the state court was responsible for decades of delay, and in cases of extreme delay a state court's decision is "'too late' for meaningful review ...." *Objections*, ECF No. 102, at 9. To provide support for this position, Petitioner cites two circuit opinions—*Turner v. Bagley*, 401 F.3d 718 (6th Cir. 2005) and *Ward v. Freeman*, No. 94-CV-6424, 1995 WL 48002 (4th Cir. Feb. 8, 1995)—which held that a petitioner's claims should be considered on the merits by the district court. *Id.* This Court finds that neither *Turner* nor *Ward* is applicable to this case.

As the Magistrate Judge properly found, neither *Turner* nor *Ward* directly held that a district court should not give *deference* to a state court decision that already decided and affirmed a petitioner's conviction. ECF No. 98, at 36. Rather, both *Turner* and *Ward* were cases limited to the issue of exhaustion, and merely held that when there is inordinate delay, attributable to the state, in hearing a petitioner's claim, a district court should not dismiss a case for failure to exhaust and should instead hear the case on the merits when no state court decision exists to defer to. *See*

*Turner*, 401 F.3d at 720, 727–28 (stating that "[t]he issue on appeal is whether the district court properly dismissed [the petitioner's] habeas corpus petition for lack of exhaustion," and "[t]he error presented to this Court is that of the district court, which should have considered the merits of [the petitioner's] petition *in light of the state court's failure to do so*.") (emphasis added); *Ward*, 1995 WL 48002, at *1 (stating that the petitioner was appealing "the district court's summary dismissal of his [section 2254] petition for failure to exhaust state remedies," and that the case was only *currently* on direct appeal in the state court). Unlike *Turner* and *Ward*, exhaustion is no longer at issue in this case, and Petitioner's direct appeal was affirmed by the WVSCA before this Court had previously dismissed the case for failure to exhaust and before the case was presented to the Fourth Circuit on appeal. *State v. Plymail*, No. 14-0016 (Nov. 20, 2015); ECF No. 58-76. Thus, crucially, unlike in *Turner* or *Ward*, there is a state court decision that exists for this Court to defer to.

The Court notes that *Turner* can be interpreted to stand for the proposition that deference should not be given to state court decisions if the district court has excused the exhaustion requirement[2] only if one focuses on the following fact: when the Sixth Circuit was presented with *Turner*, the state court had finally affirmed the petitioner's conviction on the merits, yet the Sixth Circuit did not defer to the state court's decision and granted an unconditional writ. *See Turner*, 401 F.3d at 725. However, there are three key differences between this case and *Turner* which makes this fact irrelevant.

First, when the Sixth Circuit in *Turner* was reviewing the case the state court still had not decided the *inordinate delay* issue on merits, which was the issue presented to the circuit court.

---

[2] At least one district court has reached this conclusion. *See Doan v. Voorhies*, No. 1:00-CV-727, 2007 WL 894559, at *3 (S.D. Ohio Mar. 21, 2007) ("Turner, this Court stated, stood for the proposition that state court findings of fact are not entitled to deference if the district court has excused the exhaustion requirement, even if the state court subsequently issues a ruling in the petitioner's post-conviction relief proceedings.").

*See Turner*, 401 F.3d at 728. Therefore, there was still no state court decision for the circuit court to defer to. Unlike in *Turner*, the state court in this case clearly addressed Petitioner's assertion that there was "extraordinary delay in his right to appeal" entitling him to relief, and rejected this claim on the merits, providing this Court with a decision to defer to. *See* ECF No. 58-76, at 6. Second, this Court raises doubts about whether the state is at fault for Petitioner's delay,[3] whereas the Sixth Circuit in *Turner* made clear that it was a complete failure of the state court system, not of the petitioner, that led to an inordinate delay in the state court proceedings.[4] Thus, the *Turner* petitioner's "'frequent but unavailing requests to have his appeal processed' in state court" understandably led the Sixth Circuit to hold that the petitioner's claim should be heard on the merits by the federal court system. *See Turner*, 401 F.3d at 726. Finally, and perhaps most importantly, the Fourth Circuit had the opportunity to hear Petitioner's writ on the merits, just as the Sixth Circuit did in *Turner*, when the Fourth Circuit entered its opinion on November 23, 2016. However, the Fourth Circuit instead merely found that Petitioner's petition should not be dismissed for failure to exhaust. *See* ECF No. 50, at 2–5. Therefore, for the foregoing reasons, the Court disagrees with Petitioner's broad assertion that federal deference is inappropriate in this case because it is "too late" for meaningful review.

### 3. Deference to West Virginia Supreme Court—Completeness of Record Issue

Next, Petitioner objects to the Magistrate Judge's determination that this Court must give deference to the WVSCA's opinion for an additional reason: the WVSCA's decision on the delay

---

[3] *See infra*, at 14–16.

[4] For example, the petitioner "wrote a letter to attorney #1 in which he stated that he was 'completely lost,' and 'did not know what to do, or just how to proceed," yet attorney #1 expected that the petitioner would "draft his own brief on the speedy trial issue, despite [the petitioner's] insistence that he did not feel qualified to write a brief on the issue." *See Turner*, 401 F.3d at 721. Additionally, the petitioner wrote a letter "to attorney #2 stating 'I am at my wits end. I feel as if I am a ship stuck in the middle of the ocean…Please, please help me,'" yet attorney #2 had written only one letter to the petitioner, "but did not otherwise contact him, much less attempt to speak with him, during the eight months in which she was his attorney." *Id.*

-10-

issue was based on a materially incomplete record. *Objections*, ECF No. 102, at 9. After reviewing the record before the WVSCA, as well as the missing evidence that Petitioner claims is material to the delay issue, this Court disagrees with Petitioner.

As stated earlier, in a § 2254 Petition, deference must be given to a state court's decision when the decision is "adjudicated on the merits." *See Gordon v. Braxton*, 780 F.3d 196, 202 (4th Cir. 2015). However, a claim is never "adjudicated on the merits" for purposes of § 2254(d) "when the state court makes its decision 'on a materially incomplete record.'" *Braxton*, 780 F.3d at 202 (citing *Winston v. Kelly* (*Winston I*), 592 F.3d 535, 555 (4th Cir. 2010)). One situation where a record may be materially incomplete is "when a state court *unreasonably* refuses to permit 'further development of the facts' of a claim ...." *Winston v. Pearson* (*Winston II*)*, 683 F.3d 489, 496 (4th Cir. 2012) (emphasis added) (quoting *Winston I*, 592 F.3d at 555). Therefore, a record is not materially incomplete, even when a state court precluded some factual development, so long as the state court did not act unreasonably, which occurs when "the record was substantial and contained sufficient evidence to answer" the inquiry. *See Morva v. Zook*, 821 F.3d 517, 527–28 (4th Cir. 2016).

Petitioner first disagrees with the assertion that a record is not materially incomplete, even when a state court precluded some factual development, if the state court did not act unreasonably. *Objections*, ECF No. 102, at 9. According to Petitioner, "either the state record is sufficient to permit intelligent review or it is not." *Id.* at 10. The Court sees Petitioner's argument as a distinction without a difference. The Court agrees that either the state record is sufficient to permit intelligent review, or it is not, and merely holds that—according to *Morva*—if a state record is sufficient to permit intelligent review then a state court did not act unreasonably in precluding some factual development.

-11-

Next, Petitioner states that the record before the WVSCA was necessarily incomplete because, while it did contain *arguments* regarding certain evidence, it "did not contain *any evidence* supporting (or refuting) Petitioner's assertions about the first fourteen (14) years of delay in his appeal," and "did not contain any evidence concerning that time period at all." *Objections*, ECF No. 102, at 11. Because the record before the WVSCA was over one-thousand pages,[5] this Court ordered Petitioner "to file a supplemental brief identifying, describing, and attaching as exhibits the evidence that is not contained in the record but is nonetheless material to the issue of inordinate delay." *Order*, ECF No. 110. Petitioner filed his supplemental brief, attached ten separate exhibits, asserted that those exhibits were missing from the record before the WVSCA, and argued that they are material to the issue of inordinate delay. *See* ECF No. 116. After reviewing the exhibits, the Court concludes that the record before the WVSCA was nonetheless sufficient to answer the inquiry before it.

First, the Court notes that one of the attached exhibits—ECF No. 116-8—was in fact contained in the record. *See* ECF No. 109-6, at 140–42. Second, Petitioner's argument that the state court record was inadequate was premised on the fact that it "did not contain any evidence supporting or refuting Petitioner's assertions about the first fourteen years of delay in his appeal," but paradoxically all the evidence Petitioner attached concern only the following years: 1994, 1995, 2008, and 2013. *See* ECF No. 116, at 2–14. The only evidence that Petitioner has offered which pertains to the gap in time from 1995 to 2008 is (1) a resentencing order from 1995, and (2) a letter from his attorney near that time which did not reference the order. *See* ECF No. 121-6; ECF No. 121-7. These two pieces of evidence relate to this large gap in time because Petitioner asserts that part of the reason for his appellate delay is that he was never made aware of the 1995

_____
[5] *See* ECF No. 109.

resentencing order until 2008. *See Petition*, ECF No. 1, at 10–14. However, a simple request for a copy of the docket sheet in 1995 would have revealed to Petitioner that such a resentencing order had been entered. Because of this simple step which would have avoided a 13-year delay—according to Petitioner's own argument—it is not apparent to this Court how the actual resentencing order,[6] or a letter from Petitioner's attorney stating *nothing about* the order, would be helpful to the WVSCA in answering the delay inquiry. After all, one of the factors the WVSCA considered in determining whether there was extraordinary dereliction on the part of the state is the "clarity and diligence with which the relator has moved to assert his right of appeal." ECF No. 58-76, at 6. Thus, the Court holds that none of the attached exhibits demonstrate that the record before the WVSCA was insufficient to answer the delay inquiry.

Third, Petitioner argues that "[t]he most significant evidence absent from the record is, of course, the transcript of an evidentiary hearing," which never occurred despite his requests. *See* ECF No. 116, at 2. However, it is not clear to this Court how an evidentiary hearing would help explain why there is a 13-year gap during his appeal given Petitioner's clear explanation mentioned above regarding this delay. *See Petition*, at 13. While Petitioner also argues that "the record before the WVSCA was [in]sufficient to permit intelligent review of the 2008-2014 delay" because "[a]ttorney-client correspondence requires context and explanation to be useful," Petitioner has not made clear to this Court how an evidentiary hearing is necessary to provide context or explanations for this gap in time. *See Objections*, ECF No. 102, at 12. Thus, after reviewing the evidence not considered by the WVSCA, this Court holds that the WVSCA did not act

---

[6] Important to note, this order was indirectly in the record before the WVSCA via the docket sheet. *See* ECF No. 109-6, at 195.

unreasonably by precluding further factual development because the record before it contained sufficient evidence to answer the inordinate delay inquiry.[7]

### 4. Reasonableness of Determination of Facts

Next, Petitioner objects "to the PF&R's failure to determine whether the WVSCA's decision on the delay issue was based on an 'unreasonable determination of the facts…presented in the state court proceeding.'" *Objections*, ECF No. 102, at 12. The Court concludes that the WVSCA's decision on the delay issue was based on a reasonable determination of the facts.

When a petitioner challenges the factual determination made by the state court, federal habeas relief is available only if the state court's decision to deny post-conviction relief was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Additionally, in reviewing a state court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be *presumed correct*,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (emphasis added); *see also* 28 U.S.C. § 2254(e).

In deciding that Petitioner's appellate delay did not violate the federal or state constitutions, the WVSCA determined that "the State [was] not … so extraordinarily derelict as to justify the setting aside of petitioner's conviction." *See* ECF No. 58-76, at 6. In reaching this conclusion, the WVSCA found that: (1) at least some of the twenty-year delay of Petitioner's appeal is attributable to him; (2) it is false that he received no assistance from the State, the court system, or his numerous appointed counsel; (3) at least eight of Petitioner's attorney's withdrew as his appellate counsel either upon their own initiative or at Petitioner's instance; (4) the withdrawal of these attorneys

---

[7] Because Petitioner also objects to the Magistrate Judge's application of § 2254(d)(1) on the grounds that the section is inapplicable due to a lack of an "adjudication on the merits," the Court denies that objection for the same reasons set forth above. *See Objections*, ECF No. 102, at 13.

was due, "in large part," to "petitioner's accusatory, abrasive, and belligerent attitude, which is ever present in the caustic letters that petitioner writes to these attorneys;" and (5) "within the time frame of the delay asserted by petitioner, the record reveals that, due to a significant illness, petitioner was unavailable for trial for a period of several years." *See id.* at 6–7.

After reviewing the record, this Court cannot hold that these determinations are even incorrect, let alone "unreasonable." For example, Petitioner asserts that the delay which occurred from 1995 to 2008 resulted from the state court's failure to advise him or his attorney that he had been resentenced. *See Petition*, at 12–13. However, as mentioned above, a simple check of the docket sheet would have resolved this issue. Instead, Petitioner waited over a decade before he, as he explained, "decided to make a final attempt at exercising [his] appellate rights" after he had "gave in and *gave up*" his appeal in 1995. *See Petition*, at 13 (emphasis added). Additionally, Petitioner himself admits that an approximately three-year delay from 2005 to 2008 was due to his health issues. *See id.* at 16. Finally, while Petitioner asserts that he has evidence that he was not abrasive towards his attorneys,[8] this does not render the WVSCA's finding that withdrawal of his attorneys was due "in large part" to his own actions necessarily unreasonable in light of correspondence in the record[9] combined with the rather large number of withdrawal motions and his own requests for new counsel.[10] Thus, this Court cannot hold that the WVSCA's decision was based on an 'unreasonable determination of the facts."

### 5. Prejudice from Delay

Finally, Petitioner objects to the Magistrate Judge's finding that he cannot establish prejudice from his twenty-year delay. *See Objections*, ECF No. 102, at 13. However, because this

---

[8] For example, an affidavit from his previous attorney, Mr. Bouchillon, states that Petitioner is a "mature, reasonable and polite" client. *See* ECF No. 121-5, at 2.
[9] *See, e.g.*, ECF No. 109-6, at 180–181.
[10] *See* ECF No. 109-6 at, 194–96.

Court must defer to the WVSCA's ruling that denied Petitioner's due process claim, whether Petitioner can establish prejudice is irrelevant. Therefore, the Court denies all of Petitioner's objections, and denies his motion for partial summary judgment.

**B. Respondent's Motion for Summary Judgment**

The Court will next address Petitioner's objections to the Magistrates Judge's findings and recommendation that this Court grant Respondent's motion for summary judgment on all of Petitioner's claims. Petitioner makes the following objections: (1) this Court should review all of Petitioner's claims *de novo*; (2) this Court should not recognize the affirmative defense of procedural default *sue sponte*; (3) Petitioner's Fourteenth Amendment right to due process was violated by the trial court's coercive statements; (4) Petitioner's Fourteenth Amendment right to due process was violated by the prosecutor's improper arguments; (5) Petitioner was misled into waiving his right to testify; and (6) Petitioner received ineffective assistance of counsel at trial. *See Objections*, ECF No. 119, at 1–21. The Court will address each objection in turn.

**1. De Novo Review**

Petitioner first argues that this Court should review all his § 2254 claims *de novo* for three reasons: (1) the WVSCA's decision on his claims came too late to constitute meaningful review; (2) the belated appeal was essentially a "meaningless ritual"; and (3) all of Petitioner's claims, with the exception of his first claim, are unexhausted. *See Objections*, ECF No. 119, at 1–5. The Court disagrees, in part, and agrees, in part.

First, regarding Petitioner's assertion that the WVSCA's decision came too late to constitute meaningful review, this is the same argument that Petitioner claims entitles him to summary judgment on his inordinate delay claim. Thus, for the same reasons the Court stated above in section (III)(A)(2), the Court rejects Petitioner's argument.

As to Petitioner's second assertion that this Court must review his claims *de novo* because his belated appeal was essentially a "meaningless ritual," the Court must reject this as well. It appears that Petitioner is attempting to backdoor an ineffective assistance of counsel claim as a reason for not giving deference to a state court's decision.[11] While the Court finds Petitioner's argument creative, Petitioner has not cited any case law to support the proposition that receiving ineffective assistance of counsel on appeal renders the appeal such a meaningless ritual that the state court's decision must not be given deference. Petitioner's argument regarding the effectiveness of his appellate counsel, or lack thereof, could have been raised by Petitioner in his § 2254 petition, but was not. Thus, the Court must reject Petitioner's argument that no deference should be given to the WVSCA because the appeal was nothing more than a "meaningless ritual."

Lastly, Petitioner asserts that, even if the Court determines that the appellate process provided Petitioner with meaningful review, all his claims, with one exception, are unexhausted. *See Objections*, ECF No. 119, at 5. The Court critically notes that while Petitioner makes multiple arguments regarding exhaustion, he only *objects* to *one* of the Magistrate Judge's findings: that Petitioner's second claim concerning judicial coercion was "fairly presented" in the appeal brief and therefore exhausted. *See id.* at 6. This Court agrees with Petitioner that his second claim is unexhausted, but not for the reasons Petitioner argues.

Petitioner incorrectly argues that his second claim was not "fairly presented" to WVSCA,[12] but this Court nonetheless finds his second claim unexhausted because the WVSCA

---

[11] For example, Petitioner argues that, "without effective assistance of counsel, an appeal is nothing more than a meaningless ritual." *Objections*, ECF No. 119, at 3–5.

[12] In his brief before the WVSCA, Petitioner cited a Tenth Circuit case, *Burroughs v. United States*, 365 F.2d 431 (10th Cir. 1966), where the Tenth Circuit held that a jury was coerced, and stated that "verdict-urging on the part of the court tends to undermine the proper function of the common law jury system as contemplated by the *Seventh Amendment*." *Burroughs*, 365 F.2d at 434 (emphasis added). Supreme Court precedent has made clear that to "fairly present" an issue in state court the state does not need to be aware of the *specific* federal law relied upon, only that the

likely dismissed it on procedural grounds.[13] *See Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir.

2003) (holding that when the state supreme court found that Petitioner failed to object at the trial

stage, and thus failed to preserve any error arising from his argument, the federal court is, with

few exceptions "procedurally barred from considering his … claim," *in contrast* to his

"exhausted" claims which are subject to "to the deference mandated by AEDPA."). However,

rather than viewing the claim as procedurally barred, this Court will nonetheless analyze the

claim on the merits in section three below. *See Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir.

1999) ("[O]n occasion the determination of whether a petitioner has defaulted his claims will

present difficult issues of state law that are not readily susceptible to decision by a federal court,

while the claim advanced by the petitioner patently is without merit. In such a situation, a federal

habeas court would not be justified in considering the procedural default issue.").

### 2. Affirmative Defense of Procedural Default

Next, Petitioner argues that the Magistrate Judge should not have recognized the

affirmative defense of procedural default *sue sponte*. *See Objections*, ECF No. 119, at 7.

However, in the two instances where the Magistrate Judge mentioned Petitioner's procedural

default, the Magistrate Judge also stated that he "will forego further consideration of the

procedural default issue and address the merits of Petitioner's claim." *See* ECF No. 112, at 41,

49. Thus, the Court finds Petitioner's objection moot.

### 3. Fourteenth Amendment Right to Due Process: Coercion

---

claim being asserted is federal in nature. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that a "litigant wishing to raise a federal issue [in state court] can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies *or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."*) (emphasis added).

[13] The WVSCA's decision did not engage in any analysis or fact finding on Petitioner's coercion claim, but merely summarized both parties' arguments before dismissing the claim on procedural grounds. *See* ECF No. 58-76, at 6–8.

Petitioner objects to the Magistrate Judge's findings as to his second claim that the jurors at his trial were not subjected to judicial coercion. *See Objections*, ECF No. 119, at 11. More specifically, Petitioner makes two objections. First, he objects to the Magistrate Judge's "two-part" analysis of the issue. *See Objections*, ECF No. 119, at 11. Second, he makes an overall objection to the Magistrate Judge's findings on the merits and does so by identifying seven different issues.[14] *See id.* at 11–16. While the Court agrees with Petitioner that his second claim should not be separated via a "two-part" analysis, the Court nonetheless agrees with the Magistrate Judge, and finds that no judicial coercion took place.

Due process insures that "any criminal defendant…being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). In determining whether a jury has been improperly coerced by the trial court's statements or actions, reviewing courts consider the complained-of events "in [their] context and under all the circumstances." *Jenkins v. United States*, 380 U.S. 445, 446 (1965). In determining whether a court's specific supplemental jury instruction given when a jury has reached an impasse in its deliberations—known as an *Allen* charge—is coercive, the court should consider the following:

> the charge in its entirety and in context; suggestions or threats that the jury would be kept until unanimity is reach; suggestions or commands that the jury must agree; indications that the trial court knew the numerical division of the jury; indications that the charge was directed at the minority; the length of deliberations following the charge; the total length of deliberations; whether the jury requested additional instruction; and other indications of coercion.

*Tucker v. Catoe*, 221 F.3d 600, 611 (4th Cir. 2000).

Petitioner asserts that the following facts demonstrate that judicial coercion took place at his trial. First, during a bench conference at the conclusion of voir dire on a Wednesday, the trial

---

[14] In the interest of simplicity, the Court will not separately address the seven issues in its analysis but will instead treat the seven issues as one objection to the entirety of the Magistrate Judge's findings and recommendation.

judge was notified that there may be a problem with two potential jurors—Adams and Perry—as both had a commitment that Friday. *See* ECF No. 109-1, at 151, 167, 192–196. The Court declined to excuse those jurors and stated: "We will stay Thursday. We will get finished. We will stay late if we have to to [sic] get finished." *See* ECF No. 88-20, at 78. Adams and Perry went on to become members of the jury, and at that point all jurors knew about the Friday commitments of Adams and Perry, as well as the trial court's desire for a two-day trial. *See Petition*, at 18. Second, on that Wednesday afternoon, the Court reminded the jury twice of its desire to finish the trail in two days. *See* ECF No. 88-20, at 201, 239. Third, in the presence of the jury on Thursday morning, the prosecution twice demonstrated that it was making decisions in the "interest of time." *See id.* at 283, 307. Fourth, the trial judge stated the following to the jury on Thursday:

> We are going to - - I have talked to the lawyers. We have got to finish this case today because a couple of you have got commitments tomorrow. So we are getting along pretty good but I don't have any idea how may more witnesses there are. But you all plan to stay here until we get finished tonight. A couple of you said you may not be able to come back tomorrow. I would hate to put you in jail. We would hate to have to keep you over there all night to make sure you are here tomorrow, you know. We haven't done that very often.

ECF No. 88-21, at 87–88.

Fifth, during its charge to the jury, the trial court emphasized the jurors' duty to agree upon a verdict, but failed to explain the duty of reasonable dissent. *See id.* at 111–112. Sixth, the trial court stated the following to the jurors before deliberation: "Hopefully we will be out of here before the day is over." *Id.* at 184. Seventh, after more than two hours of deliberations, the foreperson reported that the jurors were deadlocked at "six-four-two." *Id.* at 190. The court then asked the jurors to raise their hand if they felt that continued deliberations might result in

agreement, and at least three jurors raised their hand. *Id.* at 191. The court stated the following in

response:

> Let's get this straight. Just don't say anything. Do the rest of you
> not feel that - - you know, I have given you instructions and tell
> you not to use pride or stubbornness and to consider all of the
> evidence and change your mind if you feel like you are wrong.
> Two hours and a half, you haven't had too many documents or
> whatever to look at. You have probably had time to look at all of
> those. Let me have you all go back in and see - - let you discuss it
> again and see whether or not you all feel as a group that you can
> deliberate and possibly arrive at a verdict and when you have
> agreed on something, knock on the door - - ring the bell and we
> will bring you back out here again. Because we talked about this in
> orientation, you all recall. But the Court has no way to force you
> all into making a decision. That's improper for me to do so.
>
> Just go back in and discuss it a little bit and then buzz me and we
> will bring you back out.

*Id.* at 191–92.

The jury retired to the jury room at 6:16 p.m. *Id.* at 192. At 6:40 p.m. the bailiff knocked

on the jury door, and the jury informed him that they were "working." *Id.* at 194. At 7:00 p.m.

the jury notified the court that they had reached a unanimous verdict. *Id.* at 195.

The above facts demonstrate that the trial court consistently reminded the jurors of its

desire to finish the trial by the end of Thursday, and stated—in either a joking or serious manner—

that the court would "hate to have to" put the jurors in jail or force them to stay overnight if no

verdict is reached. This Court holds that these facts, even when viewed cumulatively and in

context, do not demonstrate that there was judicial coercion in violation of Petitioner's Fourteenth

Amendment rights. The Court reaches this conclusion because the trial judge's final comments to

the jurors before deliberation, and the statements in the *Allen* charge, would have eliminated any

coercion that may have arguably resulted from previous comments. For example, before

deliberation the trial judge merely stated to the jury that he *hoped* they would reach a decision

before the day was over. Additionally, included in the judge's last words to the jurors were the statements that he had "no way to force [them] all into making a decision," and that it would be "improper for [him] to do so." Additionally, the Court notes that these final remarks to the jury occurred over four hours after the trial judge's comments regarding holding the jurors overnight— comments which were arguably said in jest. *See* ECF No. 88-21, at 86.

While Petitioner cites caselaw [15] to demonstrate that the trial court's *Allen* charge contributed to the coercive atmosphere when the judge stated that the jury should not use "pride or stubbornness" in coming to their decision, this Court finds those cases distinguishable. In *Burgos*, the Fourth Circuit held that the *Allen* charge was coercive when the judge, first, told the jury that he was "not asking anybody to give up a firmly held belief," but *was* asking that they "think about it," and, second, told the jury not to allow pride to stop them from changing their mind. *See Burgos*, 55 F.3d at 938. The Fourth Circuit stated that the "clear implication of the court's [first] remark is that jurors should *think* about giving up their firmly held beliefs," which is the "most egregious mistake that can be made in the context of an *Allen* charge ...." *See id.* at 939–40 (emphasis added). The Court reasoned that when the statements regarding giving up firmly held beliefs is "read in conjunction with the court's *immediately preceding remarks* about pride preventing one from revisiting a position previously taken, it is reasonable to conclude that such remarks would weigh more heavily on those jurors taking a stance contrary to that of the majority of their peers." ...." *See id.* at 940 (emphasis added). Thus, the Fourth Circuit held that, because the *Allen* charge "lacked the necessary balance," it was coercive. *See id.* at 941. The events in *Burgos* did not occur in this case. The trial judge here did not make any comment regarding giving up firmly held beliefs, and thus certainly did not do so immediate before stating not to let pride

---

[15] *United States v. Burgos*, 55 F.3d 933 (4th Cir. 1994); *Powell v. United States*, 297 F.2d 318 (5th Cir. 1961).

interfere in the decision making. Therefore, simply telling the jury not to "use pride or stubbornness" on its own does not cause the *Allen* charge to "lack the necessary balance," which would have resulted in a coercive charge.

In *Powell*, the Fifth Circuit found the trial court's *Allen* charge coercive when the judge stated that "the *law says* that … it is no credit to a juror to stand out in a pure spirit of stubbornness," and that "[i]f you follow the principles of law given you by the Court and if you recall the evidence in this *case you ought to be able to agree upon a verdict*." *Powell*, 297 F.2d at 319–20 (emphasis added). The Fifth Circuit reasoned that these statements were coercive because, "under all of the circumstances … the words added by the court to the conventional *Allen* charge threw the charge out of balance" when there was "no [legal] authority for the portion of the charge where the court below gave it as its opinion that it was not to the credit of a juror to stand out in a pure spirit of stubbornness." *See id.* at 320. Additionally, the Fifth Circuit found that the judge's last opinion stating that the jury "'ought to be able to agree on a verdict'…went too far" because the opinion is "not supported by any law which is brought before us." *See id.* at 321. Like in *Burgos*, the facts of the *Allen* charge in *Powell* are materially different from the facts of this case. The trial judge in this case did not suggest that the jury "*ought* to be able to reach a verdict" but instead stated that the jury should continue deliberations to "see whether or not you all feel as a group that you can deliberate and *possibly* arrive at a verdict …." Additionally, the trial judge in this case did not suggest that there was legal authority to support his suggestions or statements in the *Allen* charge regarding pride, which was crucial in *Powell*. Therefore, the Court agrees with the Magistrate Judge's findings and holds that Petitioner's Fourteenth Amendment right to due process was not violated by the trial court's remarks and instructions.

#### 4. Fourteenth Amendment Right to Due Process: Prosecutor's Remarks

Petitioner makes four specific objections to the Magistrate Judge's finding that the prosecutor in his trial did not make improper remarks that were enough to violate Petitioner's right to due process: (1) Petitioner's evidence of guilt was not sufficient to ameliorate the prejudicial effect of the prosecutor's improper argument; (2) because credibility of the witnesses was such a large part of the case, the prejudicial effect of the prosecutor's *Doyle* error was substantial; (3) because Petitioner was convicted of sexual assault, the prosecutor's comments were particularly prejudicial; and (4) the Magistrate Judge fails to acknowledge that the prejudicial effect of the prosecutor's statements was not significantly ameliorated. *See Objections*, ECF No 119, at 16–19. The Court rejects Petitioner's objections.

In determining whether a prosecutor's comments violate due process, it is *not* enough for the comments to be "undoubtedly … improper," "undesirable," or even "universally condemned." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the comments must "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id.* (quoting *Donnelly,* 416 U.S. at 642). Additionally, the petitioner must show that the prosecutor's remarks were improper *and* that the remarks prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *See United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005); *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993) (internal citations omitted).

In determining whether the prosecutor's remarks were prejudicial, the Court should consider the following factors: (1) "the degree to which the prosecutor's remarks have a tendency

to mislead the jury and to prejudice the accused;" (2) "whether the remarks were isolated or extensive;" (3) "absent the remarks, the strength of the competent proof introduced to establish the guilt of the accused;" (4) "whether the comments were deliberately placed before the jury to divert attention to extraneous matters;" (5) "whether the prosecutor's remarks were invited by improper conduct of defense counsel"; and (6) "whether curative instructions were given to the jury." *United States v. Baptiste*, 596 F.3d 214, 227 (4th Cir. 2010) (quoting *United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998)). Finally, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 – 12 (1985).

### i. Sufficiency of Evidence Objection

First, Petitioner argues that the prosecutor's comments regarding the "psychic scars" of the victim and how she was "bare and charred" by the experience served to "vouch" for her credability, and thus its prejudice cannot be overstated given how the case ultimately *came down* to credability. *See Objections*, ECF No. 119, at 17; ECF No. 109-3, at 145–46. However, the Court agrees with the Magistrate Judge that, even assuming the comments were improper, they did not prejudice Petitioner. As the Magistrate Judge identified, the prosecutor's specific comments regarding the victim's credibility were made in direct response to defense counsel essentially "vouching" for Petitioner's credibility when he stated that the alleged victim was putting on a "good show." *See* ECF No. 88-21, at 173. For this reason, and the others stated by the Magistrate Judge,[16] the Court finds that Petitioner was not prejudiced by the prosecutor's comments.

---

[16] *See* ECF No. 112, at 51–52.

*ii. Doyle Error*

Next, Petitioner argues that the prosecutor committed a *Doyle* error, and he was

prejudiced as a result. *Objections*, ECF No. 119, at 17. The Court disagrees. In *Doyle v. Ohio*,

426 U.S. 610 (1976), the United States Supreme Court held that "the use for impeachment

purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings,

violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle*, 426 U.S. at 619.

However, In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the United States Supreme Court held

that a *Doyle* error does not entitle a petitioner to *habeas* relief unless it "had substantial and

injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

In this case, the defense counsel stated the following in closing argument:

> . . . This was made immediately within two or three hours after his
> detention, and where did he go? The police took him home and he
> went to sleep. It didn't seem to me or to him that he had been
> committing any crime. He would have fled or done something.
>
> There is some doubt, serious doubt in the case. Who are
> you going to give it to? You have to give it to him.
>
> But this is the key right here and when they asked him for a
> waiver of his rights, what they call a Miranda warning, "Sure, give
> me a pen. I'll sign it. Ask me anything you want to."
>
> That's not a sign of somebody who says, I've committed a
> crime and I don't want to tell you a thing until I talk with my
> lawyer." He freely gave it to them. He says, "Well, you are going
> to give us a little release too, because you know, we detained you
> and we don't want to be liable." "Sure, give me a release. I'll sign
> it. It's a mistake. Fine."
>
> He signed it without any qualm. I want you to see those
> things. Is this a sign of somebody that was really committing a
> crime?

ECF No. 88-21, at 169–70.

In rebuttal closing, the prosecutor stated the following:

> This woman has testified under oath, has given statements
> to the police, has given statements to a paramedic she didn't even
> know about on the floor below all consistent with very minor, little

variations and he says - - the defendant's statement, which was
made three hours after, has more credibility than a cross-
examination, than a consistent story, a consistent repetition of her
personal, private life. Is this - - a woman wants to come in here and
enjoy this? People want to come in and hear this?

The statement that they gave the police was three hours - -
that he gave the police written out was three hours later. Do you
know there was uniformed policemen in his apartment, arresting
him three hours before and there is nothing in the record, nothing
in the record that shows that the statement was made to the
uniformed policeman, and that uniformed policeman was
subpoenaed by the defendant waiting in that room and he was
never called. Three hours to make up that story and it was [the
victim], folks, [the victim] who bit him.

*Id.* at 179–80.

Based on these facts, and after reviewing the record, the Court agrees with the Magistrate

Judge that the prosecutor's *Doyle* error did not prejudice Petitioner. First, this Court must note

that it rejects the Magistrate Judge's finding that there is "no indication that the prosecutor

attempted to impeach Petitioner's written statement based upon any silence following the

*Miranda* warning." ECF No. 112, at 54. The prosecutor suggested that Petitioner had "three

hours to make up [a] story," and these three hours occurred after Petitioner had been given

*Miranda* warnings. Thus, the prosecution was clearly attempting to use Petitioner's three hours

of silence to impeach his written statement.

However, the Court nonetheless agrees with the Magistrate Judge that the prosecutors

*Doyle* error did not "have substantial and injurious effect or influence in determining the jury's

verdict." First, as the Magistrate Judge noted, the prosecutor's remarks comprised only two short

*paragraphs* of the nearly 450-page trial transcript, and witness testimony corroborated that the

victim's version of the alleged events remained consistent. *See Brecht*, 507 U.S. at 639 (holding

that the State's references to petitioner's post-*Miranda* silence were infrequent because they

compromised "less than two *pages* of the 900–page trial transcript …." (emphasis added).

Additionally, the prosecutor's comments were made in direct response to defense counsel's theory that Petitioner's statement was *more* credible than any statement made by the alleged victim because the Petitioner's written statement was voluntarily made *immediately* upon receiving his Miranda warning from Detective Ball. Thus, for these reasons, and the others stated by the Magistrate Judge,[17] the Court rejects Petitioner's objection.

### iii. Additional Prejudice in Sexual Assault Cases

Third, Petitioner asserts that he was prejudiced by the prosecutor's remarks regarding the consequences of an acquittal in a sexual assault case, as well as the prosecutors "send a message" argument.[18] The Court disagrees. As the Magistrate Judge points out, once again, each of the comments that Petitioner takes issue with were in direct response to the defense counsel's comments concerning the same issue. *See* ECF No. 88-21, at 162, 172, 175, 177; ECF No. 112 at 55–56. Petitioner responds by stating that he does not understand how his trial counsel's arguments are relevant. *See Objections*, ECF No. 119, at 19. Trial counsel's statements—as well as the reasoning for the prosecutor's improper statements—are relevant because in determining whether a prosecutor's remarks were prejudicial, two factors the Court should consider are "whether the remarks were isolated or extensive" and "whether the prosecutor's remarks were invited by improper conduct of defense counsel." Thus, for these reasons, as well as the other reasons stated by the Magistrate Judge,[19] the Court rejects Petitioner's objection.

---

[17] *See* ECF No. 112, at 54.
[18] The prosecutor's comments at issue can be found at ECF No. 88-21, at 178, 182–84.
[19] *See* ECF No. 112, at 56–59.

*iv. Amelioration*

Finally, Petitioner argues that the Magistrate Judge failed to acknowledge that "the prejudicial effect of the prosecutor's improper argument was not ameliorated in any significant fashion." *See Objections*, ECF No. 119, at 19. The Court views this argument as merely a request for reanalysis of three specific factors asserted in *Baptiste*. *See id.* Thus, because the Court has already addressed the *Baptiste* factors as it applies to the prosecutor's remarks, the Court rejects Petitioner's objection. Therefore, for the above reasons, the Court holds that because Petitioner was not prejudiced by the prosecutor's improper statements to the jury, Petitioner's due process rights were not violated.

**5. Fourteenth Amendment Right to Due Process: Waiver of Right to Testify**

Petitioner next argues that this Court should "find that the trial court and/or defense counsel misled Petitioner into waiving his right to testify." *See Objections*, ECF No. 119, at 20. The Court disagrees. "A criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trail." *United States v. Rashaad*, 249 Fed. Appx. 972 (4th Cir. 2007) (citing *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003)). While a defendant may choose to waive this right, the waiver must be made voluntarily and knowingly. *See id.* at 973.

However, the Fourth Circuit has held that "'to waive the right to testify, all the defendant needs to know is that a right to testify exists,' and the [trial] court need not advise the defendant of the right nor obtain a waiver." *United States v. Sharp*, 400 Fed. Appx. 741, 749 (4th Cir. 2010) (quoting *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir. 1991)). As a result, "trial counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not." *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998). Thus, courts have found ineffective assistance of counsel where

defendants clearly acceded to trial counsel's advice and trial counsel is later found to have misinformed the defendant concerning the consequences of taking the stand. *See Blackburn v. Flotz*, 828 F.2d 1177, 1182 (6th Cir. 1987); *United States v. Poe*, 352 F.2d 639 (D.C. Cir. 1965).

Petitioner first asserts that the following law and facts demonstrate that he was improperly misled into waiving his right to testify by the *trial court*. In West Virginia, a criminal defendant who wishes to testify in his own defense is entitled to the trial court's assurance that no prior convictions, other than ones involving perjury or false swearing, will be revealed by the state during cross-examination, so long as he does not place his character or reputation in issue while testifying. *See State v. Payne*, 280 S.E.2d 72, 75 (W. Va. 1981); *Objections*, ECF No. 119, at 20. However, despite this West Virginia rule, "the State opted to threaten to introduce the convictions during its cross-examination of Petitioner," and the "court did not respond … by assuring Petitioner that, so long as he did not place his character or reputation is issue, his prior convictions would remain inadmissible." *Objections*, ECF No. 119, at 20. In fact, according to Petitioner, the court "actively assisted the State in making that threat."[20] *See id.* at 20.

To clarify, Petitioner's argument can be summarized as stating that his due process right to testify was violated because the trial court violated a *state* law. However, a trial court's decision on a question of state law is not subject to review by a federal habeas court. *See Roache v. Angelone*, 176 F.3d 210, 217 (4th Cir. 1999). As a result of this fact, and the fact that Petitioner does not argue he was otherwise coerced or prevented from testifying by the trial court, Petitioner's claim that the *trial court* misled him into waiving his right to testify is not subject to review by this Court.

---

[20] Petitioner argues, for example, that "[w]hile discussing the admissibility of Petitioner's statutory rape conviction, the court noted that statutory rape did not require forcible compulsion and then suggested it would be 'much more comfortable' admitting evidence of Petitioner's supposed attack upon Teresa Salow, the victim in Counts II-IV." *Id. at 20.*

Petitioner next argues that he was improperly misled into waiving his right to testify by the *attorney*. Petitioner asserts, for example, that his attorney "informed him that the battery conviction would 'definitely' be admissible if he chose to testify" and "that evidence from Counts II-VI would be admissible even if he did not place his character or reputation in issue." *See Objections*, ECF No. 119, at 21. The Court has reviewed the citations to the record which purports to provide evidence to these assertions, but the citations are unhelpful. However, for purposes of this analysis, the Court will assume that these facts are true.

While Petitioner can argue a constitutional violation occurred when his *attorney* misled him into waiving his right to testify based on West Virginia rules of evidence and state law, this violation would be based on an ineffective assistance of counsel claim, which the Magistrate Judge addresses in a separate section. *See* ECF No. 112, at 69. Therefore, this Court denies Petitioner's objection that his constitutional right to testify was violated by the trial court's, and his attorney's, allegedly misleading statements.

### 6. Ineffective Assistance of Trial Counsel

Lastly, Petitioner broadly objects to the Magistrate Judge's finding that he was not denied effective assistance of trial counsel, but acknowledges that the "outcome of this claim depends primarily upon the Court's determination of Petitioner's other claims…." *See Objections*, ECF No. 119, at 21–22. Because this Court need not conduct a *de novo* review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations,"[21] this Court denies Petitioner's general objection.

---

[21] *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

However, Petitioner does make one specific—and new—argument for why he received ineffective assistance of trial counsel. Petitioner asserts that his trial counsel did not "ensure that jurors were aware of the differences between [Detective] Ball's testimony at the preliminary hearing and his testimony at trial …."[22] *See Objections*, ECF No. 119, at 22. Petitioner argues that this prejudiced him because revealing "Ball's testimony about the absence of voluntary oral sex would have substantially undermined the State's position that a 'swab test' had been pointless." *Id.* For multiple reasons, the Court finds this argument confusing, and insufficient to establish ineffective assistance of counsel.

First, the Court cannot corroborate Petitioner's assertion that, "Ball also testified that, during his interview with the alleged victim at the hospital, [she] had informed [Ball] that she did not perform oral sex prior to being slapped," with the citation Petitioner provides. *See Objections*, ECF No. 119, at 22; ECF No. 109, at 60–61. Second, Petitioner provides no citation to the specific trial testimony of Detective Ball that allegedly shows it is "different" from his preliminary hearing testimony. Third, this Court is uncertain how—even assuming Detective Ball's testimony changed—the testimony about the "absence of voluntary oral sex"[23] would at all alter "the State's position that a 'swab test' had been pointless." The Court struggles to understand how Detective Ball's testimony, which is relevant to the issue of consent, has any relation to a "swab test," which is relevant to the issue of DNA. The Court finds these facts especially confusing considering Petitioner claims that he had consensual oral sex with the alleged victim. *See* ECF No. 88-21, at 68.

---

[22] Specifically, Detective Ball testified at the preliminary hearing that he observed a bite mark on Petitioner's chest while interviewing Petitioner at the police headquarters. *See* ECF 109, at 41; *Objections*, ECF No. 119, at 22. According to Petitioner, Ball also testified at the hearing that, during his interview with the alleged victim at the hospital, she had informed Ball that she did not perform oral sex prior to being slapped. *See Objections*, ECF No. 119, at 22.

[23] Again, the Court is not given a proper citation to this alleged testimony.

The only logical conclusion the Court can reach from Petitioner's arguments is that Petitioner is claiming his trial counsel was ineffective because he failed to impeach Detective Ball with a prior inconsistent statement. The Court disagrees. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that, in order to state a claim for ineffective assistance of counsel, a defendant must "show that counsel's performance was deficient," and *also* show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. The Supreme Court also held that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [this particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 698.

Even if this Court assumes that Petitioner's trial counsel was deficient in failing to impeach Detective Ball with an alleged prior inconsistent statement, the Court cannot hold that the impeachment of a detective who is only *recalling* another individual's statements makes there a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Therefore, the Court agrees with the Magistrate Judge, and rejects Petitioner's claim of ineffective assistance of counsel.

## IV. CONCLUSION

Based upon the analysis provided above, the Court **ADOPTS** the proposed findings and recommendations of Magistrate Judge Aboulhosn, **DENIES** Petitioner's motion (ECF No. 84), **GRANTS** Respondent's motion (ECF No. 89), and **DISMISSES** this action for the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to Petitioner, counsel of record, and any unrepresented parties.

ENTER:      March 19, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE